CASE 56—PETITION ORDINARY—SEPTEMBER 24.

# Lloyd vs. Colston & Moore:

### APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. An agent to sell cannot become an agent to buy in the same transaction. (*Story on Agency*, sec. 211.)

2. Real estate agents for one party, in the sale or exchange of property, cannot represent the other party in the same transaction, and cannot demand and recover commissions from both parties.

BARR & GOODLOE,            For Appellant,

CITED—

*Story on Agency*, 3d ed., sec. 211.

*Dunlap's Paley on Agency*, p. 33, and note 3, and p. 160.

1 *E. D. Smith's N. Y. Rep.*, 65 ; *Watkins vs. Consall.*

2 *E. D. Smith's N. Y. Rep.*, 170 ; *Vanderpool vs. Kearns.*

4 *E. D. Smith's N. Y. Rep.*, 245 ; *Pugsley vs. Murray.*

ATCHISON & JOSEPH,            For Appellees,

CITED—

*Amr. Law Reg.*, new series, vol. 6, Feb. No., 1867; *Barnard vs. Mounot.*

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

This action was brought by appellees, as real estate agents or brokers in the city of Louisville, against appellant, for one hundred and fifty dollars commission, claimed by them for the sale of real estate in the city of the value of six thousand dollars; and a verdict and judgment having been rendered for appellees for the sum claimed, and appellant's motion for a new trial

having been overruled, he has appealed to this court for a reversal of the judgment.

On the trial, one Kennedy was introduced as a witness on behalf of appellees, who proved that in January, 1868, appellant came to the office of appellees, who were licensed real estate brokers, and where the witness did business, "and called his attention to an advertisement in the *Louisville Courier* over his name, as '*general real* estate agent,' of a drug store for sale." Witness informed him of several that were for sale, and among them named one which belonged to Dr. Helm. After making some inquiries about it, appellant left, and in a few days returned and handed to Dr. Helm and himself a *memorandum* of some lots in the city belonging to his father, Dr. John Lloyd, which he said his father would exchange on fair terms for a drug store, having promised to buy one for him; that witness then accompanied appellant to examine Helm's drug store, with which he expressed himself to be pleased; that he was present at the drug store when Drs. Lloyd and Helm met to talk about the purchase and sale, and was present with Dr. Helm and appellant during the progress of their negotiations; that he was several days endeavoring to arrange the matter, and finally did sell the drug store for Helm to Dr. Lloyd, and Dr. Lloyd's lots to Helm for the drug store. The estimate put on the property of each was six thousand dollars. That he had greatly more difficulty in inducing Helm to take Lloyd's city lots than in getting Dr. Lloyd to take the drug store; that he (witness) represented plaintiffs (now appellees) "as agent for both Helm and Lloyd throughout the transactions; and, upon the consummation of the matter, he drew up the writings between them, and signed the same, *as agent for both parties*, in his own name.

Why, if, as he says, he was representing appellees, who were the agents of Helm and Lloyd, he, the witness, signed the writing evidencing the contract between them, as agent for both parties, in his own name, he fails to explain; nor will we stop to inquire, as it is not material.

Dr. John Lloyd was introduced as a witness by appellant, and proved that, in the first interview between Dr. Helm and himself, Kennedy was not present; that he then submitted a proposition to Helm for an exchange of property; that Helm replied that he would inform him soon whether he would accept or reject the proposition; and up to that time he had never seen Kennedy, and did not know him. They, in a few days afterwards, met again and traded. Kennedy was then present, acting for Helm, but did not make sale of his (Lloyd's) lots; that he did his own trading.

There is no intimation in the evidence that the lots exchanged for the drug store (for it was an exchange of property) belonged to appellee. The testimony of both parties shows that they belonged to his father, and no express engagement is shown of the services of appellants, or their witness, Kennedy, by appellee, to sell said lots, nor are there any facts proved from which an implied contract or employment can arise. But waiving the consideration of whether the verdict is sustained by the evidence now, we will consider the propriety of the action of the court in overruling instruction No. 4, asked by appellant, which is as follows: The court instructs the jury, that if they believe that the plaintiffs acted in the negotiations of the drug store, and the sale of the Loyds' property, of (for) both Helm and defendant, and received compensation for their services from Helm, they must find for defendant.

---

Lloyd vs. Colston & Moore.

---

Kennedy proves that Dr. Helm paid appellees one hundred and fifty dollars, the commission charged by them for the sale of his drug store.

If we look at the definition of a contract, which, according to *Parson on Contracts* (1*st volume, p.* 6), is, in legal contemplation, "*an agreement between two or more parties for the doing or the not doing of some particular thing*," we must see from the very nature of the thing that an agreement and concurrence of the minds of the parties, or a consent and harmony of their intentions, is essential to the validity of every contract; and if this be so, it must be manifest that one mind cannot represent both parties at the same time in the same transaction.

An agent to sell cannot become an agent to buy in the same transaction; good faith requires that he shall purchase the property on the best terms he can obtain for his principal. And in like manner he is bound to sell for the best price he can for the owner proposing to sell, and who is likewise his principal. In such a position the temptation to violate his duty to one or both is too great. (*Story on Agency, section* 211, *and authorities cited.*)

In *Watkins vs. Consall* (1 *E. D. Smith's N. Y. Rep., p.* 65) it is said, in making a bargain a broker can hardly act with fairness, if he expects to be paid by both parties. These two employments are entirely incompatible. The faithful discharge of one would be a violation of duty to the other, and under such circumstances commissions should not be recovered from both.

Nor is the principle settled in *Barnard vs. Monnet* (*Amer. Law Reg., February No. for* 1867, *vol.* 6, *new ser., page* 209) in conflict with the authorities above cited. That was a suit by a real estate broker, who had negotiated a sale for his principal of certain real estate at

the price fixed on it by him, but which the principal afterwards declined to take, and then refused to pay the broker or agent his commissions for the services. He was only acting for the party offering to sell; and the question was, whether he was entitled to his commissions where the sale was prevented by his employer.

The case in hand shows a demand for commissions from both parties to the transaction, claiming to have acted as agent for both at the same time, and from one of whom he has received compensation; and by this action is seeking also to make another party pay him. This, according to authority, cannot be allowed. The court below therefore erred in refusing instruction No. 4, asked by appellant.

Wherefore, the judgment is *reversed*, and the cause is remanded, with directions to award a new trial, and for further proceedings consistent herewith.