# CHARLESTON.

JAMES C. FRAZIER, *et al.* v. DAVID S. BREWER, *et al.*

Submitted September 4, 1902.    Decided December 13, 1902.

1. TEMPORARY INJUNCTION—*Duplicity.*

If on bill, answers, affidavits and exhibits, the facts, circumstances and legal presumptions are strongly in favor of plaintiffs' equity and of defendants' unfairness and duplicity, it is not error for the circuit court to continue a temporary injunction and receivership for the purpose of preserving the litigated property, until the final hearing of the cause. (p. 308).

Appeal from Circuit Court, Monongalia County.

Bill by James C. Frazier and others against David S. Brewer and others. Decree for plaintiffs, and defendants appeal.

*Affirmed.*

C. A. GOODWIN and B. & W. W. S. MERIDITH, for appellants.

G. C. STURGISS, COX & BAKER, and FRAZER & FRAZER, for appellees.

DENT, PRESIDENT:

This is an appeal of David L. Brewer and others from a vacation order made by the Hon. John W. Mason, Judge of the circuit court of Monongalia County, on the 17th day of April, 1902, overruling the motion of the appellants to dissolve the temporary injunction granted and discharge the receiver appointed, in a certain chancery suit in said court pending wherein James C. Frazier and others were plaintiffs and appellants were defendants.

The controversy as appears from the record, between the parties is as follows:

The plaintiffs together own and hold in their names for the benefit of themselves and others, one hundred and forty shares of stock of the Iron City Oil and Gas Company; the plaintiff William Hill owning thirty-eight shares by original purchase; and plaintiff James C. Frazier holding ninety-one shares, W. K. Given three shares, Leila J. Frazier two shares, Bryan Gordon two shares, William Gordon two shares and Robert E. Guy two shares, making one hundred and two shares which were acquired in the following manner:

On the 15th day of February, 1902, Charles F. Boehler and Leopold Sigwart entered into a contract in writing with James C. Frazier, trustee, and E. M. Grant, manager of the Union Gas and Water Company, by which among other things, the said parties of the first part agreed to deliver to the parties of the second part not less than seventy nor more than one hundred and two shares of stock in the Iron City Oil and Gas Company at the fixed price of two hundred and twelve dollars and fifty cents per share on or before the 21st day of February, 1902. This was done on the last day named, James C. Frazier paid the price and had the shares assigned to the parties as aforesaid.

James C. Frazier claims that when this contract was entered into it was understood and agreed between the parties thereto, that the whole stock issue of the company only amounted to one hundred and seventy-two shares, and that by his purchase he and those represented were to have full control and management of the company, with the right to reorganize the same, and that the directors and stockholders whose stock he was purchasing were to drop out and permit new directors to be appointed, nominated by said Frazier, and thus the affairs of the company were to pass to the control of the plaintiffs as representing one hundred and forty out of one hundred and seventy-two shares of stock. On the 8th day of March a stockholders' meeting was called for this purpose, as said Frazier supposed, when to his surprise the very stockholders and directors whose stock he had purchased in good faith turned up with one hundred and seventy-eight new shares of stock issued by them on the 20th day of February, at the par value of one hundred dollars, took possession of the meeting and proceeded to organize the company to suit themselves. Whereupon the plaintiffs withdrew with their one hundred and forty shares of stock and effected an organization and made demand for the books and assets of the company. Being refused this, they filed a bill in chancery to enforce specific performance of the contract had with Bochler and Sigwart, and to have the one hundred and seventy-eight shares of stock cancelled as issued in fraud of their rights. They also had a temporary injunction issued to prevent the defendants from issuing further stock and a receiver appointed to take charge of the property and preserve and manage it pending the litigation. Plaintiff's claim is sustained by affidavits filed. Defendants David S. Brewer, Herbert W. Fleming, Cal. F. Bochler, Robert D. Bonilman, Joseph A. Marschner, and Leopold Sigwart, as individuals and officers of the company filed their joint answer, in substance admitting the sale of stock as claimed by the plaintiff, but denying that there was any contract, agreement or understanding whereby they were to resign as directors and permit others to be appointed in their places, to be named by said Frazier; or that there was any fraud against the plaintiffs contemplated or practiced in the issue of the one hundred and seventy-eight shares of stock, and claiming that in all respects they had acted in good faith, and for the best in-

terests of their company. They filed their affidavits in support of their answer, and moved to dissolve the injunction, and discharge the receiver, which motion was overruled as aforesaid, and both the injunction and receiver were continued until a final hearing could be had on depositions and proofs. In the case of *Robrecht* v. *Robrecht,* 46 W. Va. 738, this Court held that "although the answer plainly and positively denies the allegations of the bill, yet if the facts and circumstances shown by the pleadings, exhibits and affidavits are strongly presumptive in favor of the plaintiff's equity, it is not appealable error for the circuit court to continue an ancillary injunction awarded for the purpose of preserving the status of property until final hearing." The same rule would apply to receivers of personal property. The only question now presented to the court is as to whether the facts and circumstances appearing by the record are strongly presumptive in favor of the plaintiff's equity. If so, the circuit court committed no error in continuing the injunction and the receiver until the final hearing of the cause. There are many undisputed facts and circumstances in this case which tend to sustain the plaintiff's equity, and which if not properly explained will render the same conclusive. There is no doubt but that the sale of stock was made by Boehler and Sigwart at an exorbitant price, more than double par, and that such sale was afterwards ratified by the stockholders, who were directors and who received the price agreed, on the 21st day of February, 1902, for all the stock held by them on the 15th day of February, 1902. Nor is there any doubt that such directors were fully informed of this contract on the 20th day of February, 1902, when they issued the one hundred and seventy-eight shares of stock, and became principally the owners thereof themselves, for the purpose of retaining control of the company. Knowing that they were going to receive double par on the next day for all their then holdings, they generously issued themselves a new allotment of stock at par for which they gave ten *per centum* in cash and executed promissory notes to cover the balance. They did not inform the purchaser of the old of this new issue of stock, but concealed it form him and received his money when they were fully aware that he was not getting what he bargained for, and that they had secretly agreed by resolutions spread upon the corporate minutes "to release

Charles F. Boehler and Leopold Sigwart from any and all liabilities from damages that may arise in and from and by reason of the contract with James C. Frazier and others." From this resolution it presumptively appears that they as a board and as individuals clearly understood the force and effect of the arrangement between Boehler and Sigwart and James C. Frazier, and that because it was not to be carried out in good faith, they in their corporate capacity agreed to indemnify and save harmless Boehler and Sigwart from all damages by reason thereof. This stock was presumptively issued for the express purpose of preventing James C. Frazier and those whom he represented getting the benefit of what he had bargained for, and kept from him on purpose to deceive until he had faithfully performed his bargain and the beneficiaries thereof had received more than double value for the stock already held by them. If worth more than par, why did they not pay the true value of the stock surreptitously issued to themselves. Fraud is the concealment of the truth just as much as it is the utterance of a falsehood. If these appellants knew that the issuance of this additional stock was in violation of the agreement, had with James C. Frazier, and the facts and circumstances point to the fact that they were fully informed on the subject, and knew that he was paying a large price for the stock to gain a controlling interest, they were guilty of gross fraud in concealing from him the fact that they had issued to themselves the additional stock at par. In short they were taking advantage of his confidence and selling him a bogus brick. Not only is this true, but even if the appellants did not know these things in advance, as soon as they were made known to them even by this suit, it was their duty if they wished to escape the inference of fraud to have offered to rescind the sale, restore the purchaser his money and take back their stock. He who adopts the results adopts also the means by which they are brought about. He who receives and clings to the benefits resulting from the dealings of an unauthorized agent thereby ratify such agency and the means by which such benefits are acquired. *Dewing* v. *Hutton,* 48 W. Va. 576. He that "diggeth a pit for his neighbor" sometimes falls therein himself. Fraud being admitted, there is no question as to the jurisdiction of a court of equity. *Boyce* v. *Montauk Gas and Coal Co.,* 37 W. Va. 73. Equity also enforces specific perform-

ance of contracts for the sale of stock of corporations, especially when it is of such peculiar value that damages would not furnish an adequate compensation. 22 Am. & En. En. Law 993. To enforce such specific performance, the stock must be in its unimpaired form, as it was of the day of the contract, and not in a depreciated condition by secret issues of new stock made between the day of the contract and the actual transfer of the stock. In other words, a purchaser is entitled to what he bargains for, and not something greatly inferior and depreciated in value by the secret intrigue of the sellers. Whether E. M. Grant and the Union Gas and Water Company are necessary parties to this suit does not yet clearly appear. The fact that they are not parties is not sufficient ground either to dissolve the injunction or discharge the receiver. The facts, circumstances and legal presumptions are so strongly in favor of plaintiff's equity and the defendants' duplicity that the court committed no error in continuing the injunction or the custody of the property until a final hearing of the cause. The decree is affirmed.

*Affirmed.*