# CHARLESTON

TRUSLOW *v.* PARKERSBURG BRIDGE AND TERMINAL RAILROAD Co.

Submitted January 29, 1907.    Decided March 26, 1907.

1. EQUITY—*Decree—Conformity to Pleadings.*

There can be no decree except on a case made by the pleadings, and a party cannot avail himself of a matter of complaint or defense not set up by proper pleading.   (p. 630.)

2. PRINCIPAL AND AGENT—*Agent of Both Parties—Validity of Acts.*

If an agent acts in a dual capacity, without the knowledge or consent of the parties for whom he is acting, his acts are voidable at the election of either of the parties upon discovery of such double agency, without proof that the party disaffirming the acts has been injured thereby.   (p. 630.)

3. SAME—*Ratification of Voidable Acts.*

A principal may ratify the voidable acts of his agent, and such ratification may be express or implied.   And where, after a discovery of such acts, the principal, with full knowledge of the facts, acts in such manner as to unmistakably indicate that he intends to avail himself of the benefits of the contract made by the agent, he will be deemed to have ratified such acts in their entirety.   (p. 632.)

4. SAME—*Evidence.*

Where an agent employed to secure options on certain lands, for his services is to receive a stipulated compensation per day, and in the performance of his services takes from the optioner a commission contract by which it is agreed that in case the agent succeeds in selling the land under the option he is to receive from the optionor a certain sum, he thereby becomes the agent of both parties, and the optional contract is voidable at the election of either of the parties thereto.   (p. 632.)

Appeal from Circuit Court, Wood County.

Bill by Mary J. Truslow and others against the Parkersburg Bridge & Terminal Railroad Company and others. Decree for plaintiffs, and defendant railroad company appeals. *Affirmed.*

Reese Blizzard, for appellant.

W. H. Wolfe, Jr., and Wm. Beard, for appellees.

Sanders, President:

The Parkersburg Bridge and Terminal Railroad Company employed J. M. Mitchell to procure for it options on certain property on the south side of the Little Kanawha River from Parkersburg. For this service he was to receive a fixed compensation per day. Acting in this capacity, he took from the plaintiffs, Emma J. and W. F. Truslow, on the 21st day of November, 1902, an option on certain property owned by them, the title to which was in the female plaintiff, for which property the sum of sixteen hundred dollars was to be paid. The option was taken in the name of J. A. Shrewsbury, assigned to Mitchell by Shrewsbury, and by Mitchell assigned to the Railroad Company. By its terms the option was to be assigned within ninety days, and on the 31st day of January, 1903, the company notified the plaintiffs in writing that it would accept the option and upon execution to it of deed would pay the price agreed to be paid.

In the latter part of February or the first of March, 1903, the company discovered that the agent, Mitchell, had been taking commission contracts on all the property optioned by him—that is, he agreed with the land owners that in case a sale was effected by him through the option taken he was to receive a certain additional sum—in this particular instance the sum being seventy-five dollars. Upon discovery of this fact, the relations between Mitchell and the company were severed, the company taking from Mitchell an assignment of all commission contracts taken by him. Negotiations were entered into with a view of obtaining from the plaintiffs a contract more favorable to the company, and it refusing to comply with the terms of the option, this suit was, on the 16th day of January, 1904, instituted for the purpose of compelling a specific performance of the agreement. Upon

a hearing, the court decreed that the contract should be specifically enforced, and from this decree the Railroad Company has appealed.

The option in question was acknowledged by the appellees before J. M. Mitchell, and this, it is claimed, renders the option void, inasmuch as Mitchell having an interest in the option, was disqualified from taking the acknowledgment. Whether or not Mitchell's interest was such as would disqualify him from taking the acknowledgment we do not decide. An examination of the pleadings shows that nowhere is the incompetency of Mitchell to act in this capacity set up as an avoidance of the optional contract, but this matter in avoidance is first relied upon in argument. In order that the defendant could avail itself of this defense, it is necessary that the facts constituting it should be set up by proper pleadings, and this is not done. It is the well settled rule of equity practice that there can be no decree without proper pleadings to support it. There is no allegation in the pleadings to show that the J. M. Mitchell who took the option is the same person who took the commission contract. In order for the appellant to avail itself of this defense, it would be as necessary to allege that the person who took the option was the same as the one who took the commission contract as it would be to prove that fact. "A court of equity can only decree on a case made by the pleadings. Evidence of matters not noticed in the pleadings will be of no avail." *Welfley* v. *Shenandoah I., L., M. & M. Co.*, 83 Va. 768. "A decree must have for its basis a proper pleading giving adequate facts to support it." *Turner* v. *Stewart*, 51 W. Va. 493; *Lang* v. *Smith*, 37 W. Va. 725; *Evans* v. *Kelley*, 49 W. Va. 181.

There is no contention but that at the time the option was taken by Mitchell he took the commission contract; it is equally as well settled that after discovery on the part of the company that the commission contract had been taken, it took an assignment of them from Mitchell, and that it retained possession of the option and commission contract taken from the plaintiffs until the institution of this suit. It is controverted that the Truslows had knowledge that Mitchell was acting in a dual capacity, and it is also a controverted fact as to whether or not the appellant had knowl-

edge at the time Mitchell was taking the options that he was also taking the commission contracts. Mitchell says that the officers of the company knew it, and this is denied on their part. It is also settled that there was never any formal notice of revocation served upon the appellees after the discovery by the appellant of the alleged bad faith of its agent. One F. C. Sands testified that he was employed by the company, upon discovery by it that Mitchell was taking the additional contracts, to go to the appellees and endeavor to purchase the property upon more favorable terms—his mission being, as he states, to tell them that the company would not take the property at the prices made. This is the only evidence of revocation upon the part of the appellant.

The appellant, at the time of the discovery by it of the fact that Mitchell had taken the commission contract, had already served notice upon the appellees that it would accept the option taken by Mitchell and comply with its terms. This converted the option into a binding contract, with mutuality of obligation and remedy. *Pollock* v. *Brookover*, 60 W. Va. 75, (53 S. E. 795); *Rease* v. *Kittle*, 56 W. Va. 269; *Ide* v. *Leiser*, 10 Mont. 5. At that time either party could have enforced specific performance. Under these circumstances, what was obligatory upon the appellant to do upon discovery of Mitchell's dealings with the defendants, if it wished to repudiate his actions and accept none of the fruits of his labors. Could it remain passive until suit was brought to compel specific performance of the contract? We do not think so. It was obligatory upon the appellant, if it wished to be relieved from the contract created by its acceptance of the option, to have notified the appellees promptly upon the discovery by it of the bad faith of Mitchell, of its election not to be bound by the contract. Has it performed this duty in such manner as to relieve itself of liability? No one testified that the contract was repudiated. The efforts of Sands, the only person in any way connected with the appellant who talked to the appellees relative to the contract after Mitchell's assignment of the commission contracts to it, seem to have been directed primarily to the securing of a more advantageous contract, and it is evident from his testimony that the company was seeking, in the event that such contract could not be secured, to avail itself of the original con-

tract. Its action in taking an assignment of the commission contract is the strongest evidence of its ratification of the acts of Mitchell. Why take an assignment of this contract, unless the company intended to avail itself of the benefits of the optional contract made by him. There seems to be no reason why this assignment should have been taken, if the company had intended, as it now says it did, to repudiate Mitchell's action.

The appellant, after taking the assignment of the commission contract, retained the same in its possession, and has never offered to surrender to the appellees either this option or the commission contract, and its action in this respect indicates an intention on its part to avail itself of the benefits of the contract in case it should deem it expedient to do so. It filed these papers as exhibits with its answer, and relies upon its defense to this suit as a repudiation of the contract.

The fact that the appellant, with full knowledge of all the facts, ratified the contract made by Mitchell, renders immaterial another question raised by counsel for it, and that is that whether or not the appellees knew of the double agency is immaterial, as the appellant had the right to disaffirm the contract upon discovering such double agency, irrespective of whether or not the appellees had notice of such agency and regardless of whether or not the appellant could show that it was damaged thereby. This position is sound, both upon reason and authority. "When an agent acts for both parties in making a contract requiring the exercise of discretion, the contract is voidable in equity upon the application of either party, or the circumstance is available as a defense in an action at law upon the contract." 1 Am. & Eng. Ency. Law, (2nd Ed.) 1073. *Lloyd* v. *Colston*, 5 Bush (Ky.) 587; *Crump* v. *Ingersoll*, 44 Minn. 84; *Young* v. *Hughes*, 32 N. J. Eq. 372; *Fish* v. *Leser*, 69 Ill. 394. "A man cannot be the agent of both the buyer and the seller in the same transaction, without the intelligent consent of both parties; nor can an agent act for himself and his principal, nor for two principals on opposite sides in the same transaction, without like consent. All such transactions are voidable, and may be repudiated by the principal without proof of injury on his part. Nothing will defeat the right of the principal except

his own confirmation after full knowledge of all the facts."
*Ferguson* v. *Gooch*, 94 Va. 1.

But while this is true, it is equally as well settled that a principal may, upon discovering that his agent has acted in a double capacity, ratify and confirm his acts, and thus be bound in like manner as if the agent had not exceeded his authority, but had acted wholly within the powers given to him. "Where with a knowledge of all the facts the principal acquiesces in the acts of the agent under such circumstances as would make it his duty to repudiate such acts if he would avoid them, such acquiescence is a confirmation of the acts of the agent." *Curry* v. *Hale*, 15 W. Va. 867; *Dewing* v. *Hutton*, 48 W. Va. 577; *Coulter* v. *Blatchley*, 51 W. Va. 167; *Frazier* v. *Brewer*, 52 W. Va. 306. "Where a party originally had a right of defense or of action to defeat or set aside a transaction on the ground of actual or constructive fraud, he *may* lose such remedial right by a subsequent confirmation, by acquiescence, and even by mere delay or *laches*. * * * If the party originally possessing the remedial right has obtained full knowledge of all the material facts involved in the transaction, has become fully aware of its imperfection and of his own rights to impeach it, or ought, and might, with reasonable diligence, have become so aware, and all undue influence is wholly removed so that he can give a perfectly free consent, and he acts deliberately, and with the intention of ratifying the voidable transaction, then his confirmation is binding, and his remedial right, defensive or affirmative, is destroyed." Pomeroy's Eq. Jur., section 964.

The right to disaffirm was waived by the appellant when, after discovery of Mitchell's agency for both parties, it took an assignment of the commission contract, and by its subsequent neglect and omission to notify the appellees that it would not be bound by the contract.

We see no error in the decree of the circuit court, and it is affirmed.

*Affirmed.*