# CHARLESTON.

### FLAT TOP NATIONAL BANK *v.* A. F. PARSONS.

Submitted January 17, 1922.  Decided January 24, 1922.

1. NEW TRIAL.—*Evidence Obtainable by Due Diligence No Ground Although Discovered Subsequently.*

    It is the duty of the defendant to anticipate such issues of fact as will probably arise in the course of a trial; and if, by due diligence he could have produced at the trial evidence to meet an issue, but failed to do so, he can not obtain a new trial on the ground that such evidence was discovered since the trial. (p. 57).

2. SAME—*After Discovered Evidence as to Genuineness of Signature Held Cumulative Merely.*

    After discovered evidence introduced on a motion for a new trial, by the defendant, in an action for the recovery of

money on a note, to which his name was signed by another person alleged to be his agent and attorney in fact and under a claim of authority so to do by virtue of an alleged power of attorney, the genuineness of the signature· to which was denied by him, in his testimony given in the trial but which was affirmed by expert evidence adduced by the plaintiff, such after-discovered evidence, consisting of the testimony of a scientific handwriting expert, to the effect that such signature, in his opinion, based upon a comparison thereof with other admittedly genuine signatures, is not in the handwriting of the defendant, is merely cumulative and constitutes no ground for a new trial. (p. 57).

3. PLEDGES—*Lender Not Limited to Sale of Note Pledged as Security, But May Bring Suit Thereon.*

A party obtains a loan at a bank, by executing a collateral note, containing a provision for sale of the security deposited therewith upon non-payment of note at maturity, and pledges therewith the negotiable note of a third party, not due, in favor of the borrower and bearing his endorsement. Upon non-payment of borrower's collateral note, the bank is not limited to its remedy by way of sale of the pledged security, but may, by suit, enforce payment of the notes so pledged. (p. 59).

4. PRINCIPAL AND AGENT—*Note Executed by Agent Need Not Show Such fact on its Face.*

A note executed for a principal, by an agent, need not show upon its face that it was executed by such agent, and the authority of the agent may be established as in other cases of agency. (p. 61).

5. SAME—*Principal Cannot Retain Benefit of Acts of Unauthorized Agent and at the Same Time Repudiate Them.*

Generally speaking, a principal can not knowingly retain the benefit of the acts of an unauthorized agent and repudiate the agent's acts. If he would repudiate, he must refund, and retention of benefits after full knowledge and demand amounts to a ratification of such unauthorized acts. (p. 61).

Error to Circuit Court, Cabell County.

Action by the Flat Top National Bank against A. F. Parsons. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Simms & Staker* and *Holt, Duncan & Holt,* for plaintiff in error.

*French & Easley,* and *Fitzpatrick, Campbell, Brown & Davis* and *Williams, Scott & Lovett,* for defendant in error.

MEREDITH, JUDGE:

This is an action of assumpsit brought by the Flat Top National Bank of Bluefield against A. F. Parsons in the Circuit Court of Cabell County, to April rules, 1921, and was tried before a jury on the 20th, 21st and 23rd days of May following. There are four counts to the declaration, the first being indebitatus assumpsit; the second, a special count upon a note executed by the defendant payable to the order of one, C. T. Benton, at the Huntington Banking & Trust Co. for $15,000.00, dated November 8, 1920, and maturing January 1, 1921, and by Benton endorsed to the plaintiff; the third count declares upon the same note as having been made by the defendant by and through his representative and agent thereunto duly authorized; and the fourth and last count being for money loaned and advanced by the plaintiff to the defendant; all of said counts, however, are upon the same cause of action.

The defendant pleaded non-assumpsit, and non est factum as to the note sued upon. The trial resulted in a verdict for the plaintiff for the amount of the note with interest to date of verdict; the defendant made a motion to set aside the verdict and grant him a new trial, assigning various grounds, which motion was overruled, and judgment was entered upon said verdict.

The record shows that some time in February, 1920, Benton, who was an expert accountant, became acquainted with the defendant, Parsons, who was a coal operator and real estate dealer and interested in a number of coal companies; that Parsons, either individually or as an officer of some of his companies, employed Benton to audit the accounts of some of his corporations, which employment lasted for some considerable part of 1920, and during that period Benton and Parsons engaged in various business transactions with each other, loaning each other money from time to time, either for themselves or for companies which they controlled, Benton being practically owner of the Benton-Bailey Company, his

90 W. Va.

auditing company, and the Mountain State Coal Corporation.
It is shown that between February, 1920, and some time in
December of the same year, Benton and Parsons, in order to
aid each other individually or their various companies, en-
gaged in the dangerous practice of ''kiting'' checks and
notes, the checks and notes exchanged between them either
for their individual or corporate use aggregating between
$150,000.00 and $200,000.00; the note in suit is one of the
links in these ''kiting'' operations.     About November 3,
1920, Parsons executed his note payable to the order of Ben-
ton at the Huntington Banking & Trust Co. for $15,000.00,
due November 13, 1920; this note was discounted at that
bank by Benton, and he and Parsons were notified that it
must be paid at maturity; the two went to Ashland, Ken-
tucky, to raise the money to pay it, but were unsuccessful;
they came back to Huntington about the eighth of Novem-
ber and Benton says that Parsons there told him to ''go out
and do everything that was necessary to get the money and
pay that note,'' meaning the note that would fall  due  on
November 13, at said Trust Company; about that time Par-
sons made his check, dated November 13, 1920, drawn on the
First National Bank of Whitesburg, Kentucky, in favor of
the Huntington Banking & Trust Co., and delivered it to
Benton for him to use in paying the note when due, though
Parsons did not have sufficient funds in the Whitesburg
bank to cover this check; in this emergency Benton gave to
Parsons a check of his Mountain State Coal Corporation for
$15,000.00, dated November 13, 1920, drawn on the Ohio
Valley Bank of Huntington, so that Parsons could use it
to meet his check on the Whitesburg bank, but the Mountain
State Coal Corporation did not have sufficient funds in the
Ohio Valley Bank to cover its check, and it therefore was
necessary to secure funds to meet this latter check; Benton
went to Charleston about the 10th of November, but was un-
successful in raising the funds there; shortly thereafter he
went to Bluefield and made arrangements with the plaintiff
bank for a loan of $15,000.00, by giving his own note, being
the usual form of a bank collateral note and pledged there-
with the note of defendant, Parsons, payable to the order

of Benton with the latter's endorsement on it; he did not take these notes with him but returned to Huntington, and had his collateral-note and the Parsons note sent by mail to the plaintiff bank.    The note of Benton in favor of the plaintiff bank was dated Nov. 18, 1920, payable in thirty days, for $15,000.00; the Parsons note was for the same amount and dated November 8, 1920, and payable January 1, 1921, with interest from its date.    The plaintiff bank discounted the Benton note and placed the proceeds  thereof to Benton's credit in the plaintiff bank; Benton drew upon this account and deposited the funds in the Ohio Valley Bank to the credit of the Mountain State Coal Corporation in time to make its check good, previously given to Parsons, and delivered Parsons' check to the Huntington Banking & Trust Co., and thereby paid the $15,000.00 note, which Parsons had given to Benton and which  Benton had discounted there.

The plaintiff did not sue Benton upon his note given it, but sued Parsons upon the note which Benton has used as collateral in obtaining the $15,000.00 from the plaintiff bank. Upon the trial the note sued on was offered in evidence and Benton testified on behalf of the plaintiff, detailing the transactions here related, as well as many other collateral facts and circumstances, and that the note in suit was not signed by Parsons, but that Parsons' name as maker was signed to the note by Benton by authority given to him by Parsons, and which authority Benton claims was given to him orally about the time that he and Parsons came back from Kentucky, when they found it necessary to raise the money to pay Parsons note at the Huntington Banking & Trust Co., and also produced a power of attorney which he testified Parsons signed on July 1, 1920, in his presence, detailing time, place and circumstance, which is in the following words:

Huntington, W. Va., July 1st, 1920.

To Whom it May Concern:

This is to certify that I have this day given C. T. Benton full power of attorney to sign and execute negotiable instruments.

90 W. Va.

And accordingly I hereby ratify and confirm such Acts and deeds by C. T. Benton same as done by me.

A. F. PARSONS.

A number of bankers also testified on behalf of the plaintiff that the name signed to the power of attorney, upon comparing the signature with admitted signatures of Parsons, in their opinion, was in the handwriting of the defendant; the defendant in his testimony denied the execution of the power of attorney, but produced no expert testimony relating to the signature to the power of attorney, but did produce a number of witnesses who claimed to be familiar with Benton's handwriting, tending to establish that a certain note of $12,500.00 purporting to have been signed by Parsons, as well as certain stock certificates and certain other notes signed by various other persons in favor of Benton which were found in Benton's office some time in the month of December, 1920, while Benton was away, were forged instruments in the handwriting of Benton.    Parsons not only denied the execution of the aforesaid power of attorney, but denied that he had ever authorized Benton to execute the note in his behalf, either by the power or otherwise.

After verdict, the defendant, in support of his motion to set it aside and grant a new trial, filed various affidavits, including that of one, George W. Wood, alleging that he was surprised upon the trial by the production of the power of attorney; that he had never seen it until the day of the trial, and that not until after the trial had he had opportunity to have it examined by a scientific examiner of questioned documents, when he employed said Wood, a scientific handwriting expert, to make such examination, and who, after comparing it with Parsons' signatures offered in evidence, pronounced it a forgery, and who would state that in his opinion the purported signature of Parsons to said power of attorney was in the handwriting of Benton; various affidavits were filed in opposition to said motion, tending to show that Parsons for some time before the trial knew of the alleged execution of the power of attorney, and that he might have reasonably anticipated that it would be offered in evidence.

For a reversal of the action of the Circuit Court, the defendant in this court alleges the following grounds:

First.  The defendant contends that the verdict should have been set aside and a new trial granted on the ground of newly discovered evidence.   We do not believe that the defendant has in any sense placed himself within the rule as laid down by the former decisions of this court in granting new trials for after-discovered evidence.   He was certainly aware, as disclosed  by the record, that an alleged power of attorney would be relied upon by the plaintiff to show the authority of Benton to execute the note in suit for Parsons.   In the decision of this court by Judge POFFENBARGER, in the case of *Butts* v. *Butts*, 81 W. Va. 55, 94 S. E. 360, the court says:

"It is the duty of a litigant to use prevision.   He must look forward and anticipate and provide for what he ought to know may happen in a trial.   This is the clear import of language used in *State* v. *Stowers*, 66 W. Va. 198.   If a party were permitted to obtain a new trial, on his statement of lack of knowledge of materiality of a fact he could have proved, if he had known it was material, then the way to a new trial would be both short and easy.   The testimony of these witnesses, if admitted, would merely add to that of Mrs. Kirkendall, the bookkeeper.   She says the affiants were at the office on certain days.   They would say the same thing.   That makes their evidence cumulative.   This alone bars it.   There are four requisites: discovery after the trial, inability to discover it before by the exercise of reasonable diligence, materiality and non-cumulativeness.   All   must be present.   Lack of any is fatal."

We can not say that the proposed evidence of Wood would meet any of these four requisites, except that it was actually discovered after trial, but it ought to have been discovered before; the defendant, having reasonable grounds to anticipate that the alleged power of attorney would be offered in evidence, could have called bankers from his own or other cities as handwriting experts, or he could have produced Wood or other scientific experts at the time of trial; his attention was called to the power of attorney in the opening of the case

on the first day, and the trial continued for three days. He says now that he was surprised, yet no motion either for continuance or delay was made in his behalf; under such circumstances, after a verdict against him, he can not complain. This court held in the case of *Henderson* v. *Hazlett*, 75 W. Va. 255, 83 S. E. 907, that "Generally it is no ground for a new trial that the movant was surprised at the testimony of his adversary or of other witnesses, who had not misled him by previous statements inconsistent therewith, and where there is no evidence of trickery or of tampering with the witness." But we can not say that the proposed evidence of Wood would probably produce a different result if a new trial were granted; neither can we say that it is not cumulative. In the case of *John Schoen Plumbing Company* v. *Hugunin,* 156 Mo. App. 68, 135 S. W. 967, in an action to foreclose a mechanic's lien, plaintiff moved for a new trial on the ground of newly discovered evidence, consisting of the testimony of an expert in handwriting who had testified that he had examined a receipt offered in evidence signed by the plaintiff, and that he would testify that in his opinion certain words in it were written after the receipt had been given, and after it had been signed by the plaintiff. The matter of the presence of the words in the receipt was gone over at the trial, and testified to by the parties, plaintiff denying that these words were in the receipt when he signed it. It was there held that the proposed evidence of the handwriting expert was merely cumulative of plaintiff's own testimony, or contradictory of the defendant's, or in the nature of impeachment and was not ground for a new trial. See also, *First National Bank* v. *Heaton*, 6 Thompson & Cook (N. Y.) 37, and *Vickers* v. *Phillip Carey Co.*, 49 Okla. 231, 151 Pac. 1023, L. R. A. 1916-C, 1155 and notes thereto.

So we hold that because of lack of diligence in discovering this proposed evidence and because we can not say that this evidence would produce a different result if a new trial were granted and because of its cumulative character, the court did not err in refusing to set aside said verdict for the ground assigned.

Second. The second error relied upon is that the ver-

dict was contrary to the weight and preponderance of the evidence. The verdict of the jury was found upon competent though conflicting testimony, and after a careful review of the evidence, we can not say that there is a preponderance of the evidence in favor of the defendant; on the contrary there is abundant evidence to support a verdict, and where issues properly submitted to the jury are solely questions of fact to be determined from competent, though conflicting testimony, the verdict will not be disturbed unless the evidence is plainly insufficient to sustain it.    *Stewart* v. *Parr*, 74 W. Va. 327, 82 S. E. 259.

Third.   It is contended by defendant that the plaintiff acquired no title, either legal or equitable, to the note sued on, and therefore had no right to maintain this suit upon it, claiming that the only remedy plaintiff had was to sell the note, according to the terms of the note executed to the plaintiff by Benton. The defendant claims that the express provisions of the note of Benton to the bank, providing for a sale of the collateral in case of non-payment of Benton's note at maturity was the exclusive and only remedy of the bank, so far as the collateral deposited therewith was concerned. We can not agree with this view; this suit was properly brought by the plaintiff.   The note in suit was endorsed by the payee, Benton, and delivered to the plaintiff; it being a negotiable note, title thereto passed to the plaintiff; suit could not be maintained thereon by Benton in his name so long as title remained in the plaintiff, and it was the right of the plaintiff, if not its duty, to collect the note by suit. It was decided by this court in the case of *First National Bank* v. *Kittle*, 69 W. Va. 171, 71 S. E. 109, that the creditor is bound to use proper care and diligence in the management and collection of collateral securities, and that a surety will be released to the extent of the loss actually sustained by the negligence of the creditor to the same extent as if the loss were due to the positive act of the creditor.   This view is fully sustained by an abundance of authorities.    Barnes' Code, ch. 98-A, sec. 51; Jones, Collateral Securities, (3rd Ed.) Sec. 89; *Anderson* v. *Union Bank*, 117 Va. 1, 83 S. E. 1080; 1 Daniel, Negotiable Instruments (6th Ed.) Sec. 83; Bran-

non, Negotiable Instruments Law (3rd Ed.) page 159, citing:
*Farmer's Bank* v. *Riedlinger,* 27 N. D. 318, 146 N. W. 556,
and *Melton* v. *Pensacola Bank,* 190 Fed. 126, 111 C. C. A.
166.

Fourth.    Defendant·complains that the court erred in re-
fusing to give instruction No. 3 offered by him. We think the
court was clearly right; this instruction says: "And if the
said Benton swears Parsons authorized him to sign the note,
and Parsons swears he did not, then, unless the evidence of
C. T. Benton is corroborated by some other witness, or other
facts or circumstances proven in this case, sufficient to con-
vince the jury conclusively that Parsons is testifying falsely,
they should find for the defendant." No comment is neces-
sary upon this instruction.

Fifth.    Defendant also complains of the court's refusal
to give his instruction No. 4, which is to the effect that if the
jury believe from the evidence that Benton forged the name
of A. F. Parsons to a note for $12,500.00, and the name of J.
W. Montgomery to a note for $7,500.00, and the name of
R. C. Campbell to a note for $53,000.00, and a stock certificate
of the Logan-Elkhorn Coal Company for 250 shares, "they
may give such evidence the weight, as in their opinion, it may
be entitled to on the question as to whether C. T. Benton
had criminal intent when he signed A. F. Parsons' name to
the note sued on, and whether it was part of a general scheme,
a plan on the part of Benton, to forge a number of documents
with frandulent intent." We do not see the relevancy of
this instruction. If Benton were authorized to execute the
note in suit, the fact that he may have  executed it with
criminal intent did not affect defendant's liability thereon.
The instruction was properly refused.

Sixth.    It is further contended by the defendant that the
note in suit is not binding upon him, first, because it is not
signed by him, and, second, that even if Benton held a valid
power of attorney to execute said note on behalf of Parsons,
that the note was improperly executed, in that under such
a power, the signature should have been in some form such
as "A. F. Parsons, by C. T. Benton, Attorney in fact," or
"A. F. Parsons, by C. T. Benton, Agent," the defendant cit-

ing, to sustain his position, 21 R. C. L. page 880.    It says: "Again, if an attorney signs his principal's name to a note or mortgage without adding his own name as agent, there is insufficient execution of the instrument."    To this we can not agree.    Our Negotiable Instruments Law, Code, ch. 98-A, sec. 19, provides: "The signature of any party may be made by a duly authorized agent; no particular form of appointment is necessary for this purpose and the authority of the agent may be established as in other cases of agency." This clearly negatives the idea that the name of the agent must appear upon the note signed by him, in some capacity showing his agency.    1 Daniel, Negotiable Instruments (6th Ed.) secs. 298, 299, citing: *Mechanic's Bank* v. *Bank of Columbia*, 5 Wheaton (U. S.) 326; 1 Mechem, Agency (2nd Ed.) sec. 1128, citing: *First National Bank* v. *Gay*, 63 Mo. 33, 21 A. R. 430; *Forsyth* v. *Day*, 41 Me. 382; 2 C. J. page 673; 1 Williston, Contracts, sec. 299.

Seventh.    It is also contended that even if the power of attorney under which Benton claimed  authority to execute the note in suit was valid, it did not authorize Benton to sign Parsons' name to the note, payable to Benton, the attorney designated in the power, and that, therefore, the note is not binding upon Parsons, the defendant citing the case of *Steinback* v. *Read & Co.*, 11 Gratt. 281.    We do not question the law laid down in that case.    It is to the effect that a power of attorney given to an agent to act in the name and on behalf of his principal to draw, endorse and accept bills and to make and endorse notes, negotiable at a particular bank, does not authorize the attorney to draw a bill in the name of his principal for the benefit of the attorney.    But it is shown in this case that Benton obtained the money from the plaintiff bank for the benefit of Parsons; the money obtained on the note in suit was ultimately used to pay Parsons' note at the Huntington Banking & Trust Co.; of this there can be no question; it is fully established by the evidence."    If a person receives the benefit of the dealing of an unauthorized agent, he must also discharge all responsibilities occasioned thereby."    *Dewing* v. *Hutton*, 48 W. Va. 576, 37 S. E. 670; *First National Bank* v. *Kimberlands*, 16

W. Va. 579; *Frazier* v. *Brewer*, 52 W. Va. 306, 43 S. E. 110;
*Holt* v. *King*, 54 W. Va. 441, 47 S. E. 362; *Caton* v. *Raber et
ux*, 56 W. Va. 244, 49 S. E. 147; *Grocery Co.* v. *Dawson*, 68
W. Va. 332, 69 S. E. 845; *Truslow* v. *Bridge & Terminal R.
R. Co.*, 61 W. Va. 628, 57 S. E. 51; 1 Mechem, Agency (2nd
Ed) sec. 435, as follows:

"It is, moreover, as has been seen, a rule of quite universal
application that he who would avail himself of the advantages
arising from the act of another in his behalf must so far as it
is entire also assume its responsibilities.    If the principal
has knowingly appropriated and enjoyed the fruits and bene-
fits of an agent's act he will not afterwards be heard to say
that any portion of the act was unauthorized.    One, there-
fore, who voluntarily accepts the whole or any part of the
proceeds of an act done by one assuming, though without
authority, to be his agent,    must ordinarily be deemed to
ratify the act and take it as his own with all its burdens as
well as all its benefits.    He may not ordinarily take the bene-
fits and reject the burdens, but must either accept them or
reject them as a whole."

It is strenuously contended by defendant that the plain-
tiff elected to rely solely upon the power of attorney offered
in evidence for Benton's authority to execute the note; the
record clearly discloses that this position is not tenable. No
count in the declaration binds the plaintiff to a reliance upon
the power of attorney; had Benton had no power of attorney,
upon the record of this case, the plaintiff would have been
entitled to recover. On page 54 of the record, Benton testi-
fies: "Yes, sir, when I came back, Mr. Parsons told me to go
out and do everything that was necessary to get the money
and pay that note," and on page 56, he says that while he
executed the note in suit on behalf of Parsons under the
authority conferred by the power of attorney, he also says
that Parsons told him to do what was necessary to raise the
money to pay the check which Parsons had given on the
Whitesburg bank, to meet the Parsons note at the Hunting-
ton Banking & Trust Co.    It is true that this statement of
Benton is denied by Parsons, but the weight of their evidence
was to be determined by the jury.

When Parsons learned that his note was used at the plaintiff bank, and the evidence shows that the loan was granted largely upon the financial responsibility of the defendant, and that the proceeds thereof were turned over to him, or ultimately used in payment of his note at the Huntington Banking & Trust Co., it was his duty upon repudiating the note in the hands of the plaintiff bank to refund the money received thereon; we say ''received thereon,'' though it may not have gone directly into his hands, it was used to pay his debt; he got the full benefit thereof.

''A principal can not knowingly retain the benefit of money hired by his agent in the name of the principal, and at the same time legally refuse to repay the loan, upon the ground that the agent had no authority to borrow money.'' *Perkins* v. *Boothby,* 71 Me. 91; 1 Mechem, Agency (2nd Ed.) sec. 436, citing cases.

Having, as we conceive, disposed of all the points relied upon by defendant, and the defendant having had a full, fair and impartial trial, and finding no error, we affirm the judgment.

*Affirmed.*