# CHARLESTON.

## TRI-STATE COAL AND TIMBER LANDS ASSO. v. GRANVILLE NEACE *et als.*

Submitted October 24, 1922.    Decided October 31, 1922.

1. CORPORATIONS—*Entitled to Have Unbiased and Uninfluenced Judgment of Each Member of Board of Directors.*

   Usually a corporation conducts its business through the agency of its board of directors, and it is entitled to have the unbiased and uninfluenced judgment of each of said directors when acting in its behalf.   (p. 201).

2. SAME—*Rule Governing Contracts Procured Through Dual Agency Applicable to Contracts by Corporation With Directors Adversely Interested.*

   Where a corporation, through its board of directors, enters into a contract in which one or more of such directors are interested adversely to the corporate interests, the same rule will apply, in testing the validity of such contract, as governs contracts procured through a dual agency.   (p. 201).

3. SAME—*May, on Discovering That Director or Officer Interested as Agent for Adverse Party in Contract, Repudiate and Compel Restoration of Anything Received Thereunder.*

   Where one enters into a contract with a corporation with knowledge that one of the agents employed by him in securing said contract is a director or officer of such corporation, such corporation, upon discovering that one of its directors or officers was interested as an agent for the other party, may repudiate the contract and compel a restoration to it of anything received thereunder.   (p. 201).

4. SAME—*May, on Discovering Director Agent of Other Contracting Party, Repudiate Contract and Compel Restoration.*

   Where in such case the party contracting with such corporation has knowledge that an agent employed by him in negotiating the contract is assisting the corporation to raise the money to pay a part of the purchase price, and is also furnishing collateral to secure the further performance of the contract on behalf of the corporation, he will be charged with notice that such agent is acting in a fiduciary capacity for such corporation, and the corporation upon discovering that such agent because of the making of said contract, is to receive

a large secret profit from the party with whom it contracts, may repudiate the same and compel the restoration to it of what it has paid or delivered under the contract.   (p. 201).

Appeal from Circuit Court, Cabell County.

Suit by the Tri-State Coal & Timber Lands Association against Granville Neace and others. From a decree denying relief and dismissing the bill, plaintiff appeals.

*Reversed; Decree for plaintiff.*

*Williams, Scott & Lovett* and *John L. Whitten,* for appellant.

*Livezey & McNeer,* for appellees.

RITZ, JUDGE:

This suit was instituted for the purpose of rescinding a contract entered into between the plaintiff and the defendant Neace for the purchase of certain real estate, and to have restitution of that part of the consideration which had already been paid by the plaintiff, and the cancellation of a note given for another part of such consideration, as well as for the surrender of certain collateral given to secure the payment of said note, upon the ground that the title to said real estate was defective, and that the same was procured by fraudulent collusion between the defendant Neace and two of the directors of the plaintiff. The court below denied the plaintiff any relief and dismissed the bill.

It appears that the plaintiff was a corporation organized for the purpose of dealing in coal and timber lands in West Virginia. The directors of this corporation at the time the contract was entered into which is sought to be annulled were L. H. Cammack, A. K. Kessler, J. K. Oney, John L. Whitten, L. H. Leathers, H. A. Pratt and H. W. Cannon. These gentlemen also constituted all of the stockholders of the plaintiff. It appears that the defendant Neace had an option on a tract of a little more than five thousand acres of coal land situate in Logan county, West Virginia, which he was desirous of selling. The plaintiff was also desirous of securing such a tract of land for the purpose of investment, and entered into

a contract with Neace dated the 2nd day of April, 1920, but which contract was not executed until the next day,. by which it agreed to purchase this tract of land for the sum of $250,000.00, $5000.00 of which was paid in cash, $5000.00 evidenced by a note due at thirty days, executed by the plaintiff, and endorsed by several of its directors, and to which was attached as collateral security certain corporate stocks belonging to Kessler, Cammack and Oney, and the balance of said purchase price to be paid in further installments. It appears that the $5000.00 note above referred to was really to be treated as part of the cash payment. The contract further provided that Neace should furnish a certain abstract of title to the plaintiff's attorneys, and should convey, or cause to be conveyed, the property to the plaintiff by apt and proper deed, if the title to it should prove acceptable, by the 15th of May, 1920. Neace promptly furnished the abstract provided for in the contract, and in addition to furnishing the one called for by the contract also furnished another and additional one bringing the title down to date. Neace did not have title to this real estate, but had a contract with the owners of it by which it was to be conveyed to him provided he exercised the option to purchase on or before the 6th of July, 1920. About the 15th of May Neace, together with the representative of the owner of the property, tendered to the plaintiff a deed conveying the land from the owner of the property to Neace, and a deed conveying it from Neace to the plaintiff, and called upon the plaintiff to execute the contract upon its part. The contract provided for the payment of $45,000.00 in cash on the 15th of May, in addition to the $10,000.00 above referred to. When Neace called upon the plaintiff to perform the contract as aforesaid he was advised by its officers that the plaintiff did not have the money with which to make the $45,000.00 payment, and at his suggestion the matter was allowed to remain in abeyance. It appears that on several occasions Neace demanded performance by the plaintiff of the contract, but the plaintiff's officers always made the excuse that the plaintiff did not have the money with which to make the payment re-

quired. About the end of June, 1920, Neace served notice upon the plaintiff requiring it to immediately perform the contract upon its part, and he says that at the time he served this notice he was again advised by the officers of the company that it did not have the money with which to keep its obligation under the contract. It does not appear that there ever was any objection raised to the sufficiency of the title. Neace's option expired on the 6th of July, 1920, and the plaintiff was then notified that because of its defaults the contract could not be executed, and Neace claimed the right to keep the $5000.00 cash which had been paid, and to collect the note given for the other $5000.00, part of the cash payment, by a sale of the collateral attached to it, and by suit at law thereon against the maker and the endorsers. The plaintiff then instituted this suit seeking rescission of the contract and a restoration to it of the cash payment of $5000.00, and of the note for $5000.00 above referred to, as well as of the collateral attached thereto, and praying that Neace be enjoined from prosecuting the suit which he had instituted upon said note, and also from selling the collateral attached thereto in satisfaction thereof, upon the ground that the title to said property was not good, and that it was because of the failure on the part of Neace to tender good title that the contract was not executed. A number of defects of title are pointed out in the bill, none of which, however, were ever called to the attention of Neace until the bill was filed, and which it appears from the answer of Neace are either entirely without merit or are easily curable. In fact, we think it satisfactorily appears that if any of the things pointed out as defects constituted such, they would have been readily cured to the satisfaction of the plaintiff had Neace's attention been called to them.

The defendant Neace also in his answer set up further facts in regard to the transaction. He showed that he had an option upon the property together with another party, and that he was offering it for sale for $200,000.00, $100,000.00 cash, and the balance in equal installments, payable in one and two years; that shortly before he entered into the con-

tract with the plaintiff he had executed a contract to A. K. Kessler, one of the directors of the plaintiff, agreeing to sell him the property for $200,000.00 upon the terms above pointed out, said Kessler at said time representing to him that he had some Pittsburg parties who were interested in the property; that shortly thereafter, and about the first of April, said Kessler advised him that he could not deal with his Pittsburg parties for the property because of the fact that such a large cash payment was required, but that if a less amount of cash was required and the deferred payments somewhat extended, he could get his Pittsburg parties to take it for a larger sum, and suggested $250,000.00, and further suggested to Neace that if he would agree to the smaller cash payment and the more advantageous terms for the deferred payments, that the $50,000.00 additional purchase money would be divided among him, Kessler, the defendant Neace, and one L. H. Cammack, who was also a director of the plaintiff; that it was through Cammack that he got in touch with the Pittsburg parties, and that Cammack would have to participate in the transaction. Neace agreed to change the terms in accordance with Kessler's suggestion, and entered into a contract with Kessler and Cammack by which they agreed among themselves that if the property was sold for anything above $200,000.00 the excess should be divided equally among them. On the same day that this contract was entered into the directors of the plaintiff had a meeting at which Kessler and Cammack were both present, and at which it was decided to purchase this property at the best price obtainable. Kessler and Cammack then caused a meeting to be had between Neace on the one hand and the directors of the plaintiff on the other, and at this meeting presented the other directors of the plaintiff to Neace as the parties interested in purchasing the land. Neace proposed to sell it for $250,000.00 as had been agreed between him and Kessler and Cammack, and after some negotiations as to the terms of payment the contract of sale was entered into with the plaintiff at the price of $250,000.00. This was on the 2nd day of April. The plaintiff's attorney reduced their agree-

ments to writing, and the parties met on the evening of the 3d day of April, at which time the $5,000.00 in cash was paid to Neace, and the note for $5000.00 executed by the plaintiff, and endorsed by several of its directors, and the collateral security attached thereto, and the contract between the parties signed.  It clearly appears from the evidence that none of the other directors of the plaintiff knew of the interest of Cammack and Kessler in the sale of the property, and Neace claims that he did not know until several days afterward that Cammack and Kessler were interested in the purchase of the property as directors and stockholders of the plaintiff.  This information did not come to the plaintiff until Neace's answer was filed, in which it was disclosed.  Plaintiff thereupon filed an amended bill in which it contended that the contract was procured through fraud, and that Neace was a party to that fraud, for which reason it should be cancelled and he required to surrender to it the consideration which had already passed.  That Kessler and Cammack perpetrated a fraud upon the plaintiff conclusively appears in this case, but Neace contends that this did not invalidate the contract so far as he was concerned, because he knew nothing about their dual relation until after the contract had been consummated, while the plaintiff contends that while he says he did not know that Cammack and Kessler were directors and stockholders of the plaintiff, the facts shown are such as that he could not help but know of their relations if he exercised the most ordinary intelligence in the transaction.

There is no doubt but that a corporation in the transaction of its business is entitled to be represented by agents not corrupted by the fraud or collusion of the party with whom it is contracting.  A corporation generally transacts its business through the agency of its board of directors.  This board, as a whole, is the agent of the corporation, and its composite judgment is the basis of corporate action.  The corporation is entitled to have this judgment formed by agents entirely free from any contaminating influence.  It is entitled to the benefit of the judgment of each of the directors uninfluenced by anything adverse to the interests of the corporation.  If any-

one or more of the board of directors are so improperly influenced, the corporation is entitled to notice so that the other members of the board may form their judgment uninfluenced by the counsels of their prejudiced associates.   IV Fletcher on Corporations, § 2358; III Cook on Corporations, § 650 etc. Where one or more of the directors of a corporation occupy a dual position in relation to a contract, the rule governing the validity of that contract is in no wise different from that governing the validity of contracts between individuals procured through a dual agency.· There is no doubt but that where one enters into a contract in which his agent is interested on the other side, he may repudiate the contract upon discovering such fact, provided the other party knew of the dual agency.   Mechem on Agency, § 2138.   And it seems to be likewise very well established that where the opposite· party, because of his negligence, does not discover the dual agency, the other acting innocently may rescind the contract upon discovering the agent's fraud.   Mechem on Agency, § 2139.   There is also respectable authority for the contention that even though both parties are entirely ignorant of the dual capacity in which the agent is acting, either of them, upon discovering the agent's fraud, may repudiate the contract, and have the *status quo* restored.   Mechem on Agency, § 2139; *Marsh* v. *Buchan*, 46 N. J. Eq. 595; *Truslow* v. *Bridge & Terminal Company*, 61 W. Va. 628.   In this case it is hardly necessary for us to go to the extent of holding that the plaintiff could avoid this contract even though Neace was entirely innocent and knew nothing about the fraud being practiced by Cammack and Kessler.   It appears that at the time the contract was concluded both Kessler and Cammack endorsed the $5000.00 note given as part of the cash payment, and it also appears that each of them deposited certain collateral belonging to him to secure the payment of that note. The plaintiff argues that this was notice to Neace that Kessler and Cammack were interested in the purchase, and were not simply brokers in the transaction.   Neace, of course, knew ·that Kessler and Cammack were interested with him in the sale of the property.   He ·was fully informed of their in-

terest on one side of the transaction, and the only question is, did he have information of their interest on the other side? When they signed their names as endorsers on this $5000.00 note and put up their individual property as collateral to secure the payment of that note they did more than is ordinarily done by a broker in handling a transaction. They were furnishing part of the consideration for the purchase, and it may be said that when Neace knew this the duty devolved upon him to at once communicate to their associates the fact that Kessler and Cammack were to receive a secret profit of over $30,000.00 in the transaction. To say the least of it, we think that Neace was certainly very negligent in concluding this contract when this information was brought to his attention, and that even though it might not have amounted to positive knowledge that Cammack and Kessler were interested with the plaintiff, it did make him guilty of a fraud upon the plaintiff in securing the contract without communicating the facts to the parties with whom he was dealing. It then became his duty to inquire of the plaintiff's officers what connection his agents had with them. He should have said: "It appears from this transaction that Kessler and Cammack have some interest as purchasers of this real estate. They are interested with me in the sale of it, and I want to know just what their relations are before this transaction is closed. They may be concealing things from me which I am entitled to know." We are convinced that the facts, of which Neace admits he had knowledge at the time he concluded this contract, were sufficient to inform him that Kessler and Cammack were interested on both sides of the transaction, and under all the authorities the plaintiff, being ignorant of the fact that they were interested adversely to it, had a right to repudiate the contract when it became possessed of that knowledge. It acted promptly in this case upon the facts coming to its knowledge, and we think it is entitled to the relief it asks. Fair dealings between those engaged in business require that when one party to a transaction sees that an agent in his employ is also acting on behalf of the other party he communicate that fact to the party with whom he is

dealing. If he does not he is guilty of collusion with the agent, and is a party to the fraud being perpetrated by him, and cannot have the benefit of any contract entered into under such circumstances, provided the other party promptly repudiates it upon coming into possession of the facts.

Our conclusion, therefore, is to reverse the decree of the circuit court of Cabell county, and to enter a decree perpetually enjoining the defendant Neace from prosecuting any suit upon the $5000.00 note, or from selling, or offering to sell the twenty shares of bank stock deposited by James K. Oney as collateral to secure that note; to cancel that note and require it to be surrendered to the plaintiff, and to require the twenty shares of bank stock aforesaid to be surrendered to the plaintiff; and further decreeing in favor of the plaintiff for the $5000.00 cash paid to the said Neace, with interest thereon from the 3d day of April, 1920.

*Reversed; Decree for plaintiff.*