BOARD OF TRUSTEES OF THE LEWIS PRICHARD CHARITY
FUND *v.* MANKIN INVESTMENT COMPANY *et al.*

(No. 8448)

Submitted September 23, 1936. Decided December 15, 1936.

*Avis & Angel,* for appellant.
*George S. Wallace* and *Taylor Vinson,* for appellees.

WOODS, JUDGE:

The Board of Trustees of Lewis Prichard Charity
Fund, a corporation created pursuant to terms of a cer-
tain trust indenture, executed on March 1, 1917, by L.
Prichard, and accepted, in writing, by trustees named
therein, by this suit, seek, among other things, to im-
press the one-half interest in three certain lots, in the
City of Huntington, purchased by Houghton A. Robson,
a co-trustee, from the Prichard School, a corporation,
and later transferred to Mankin Investment Company,
on the theory that said Robson had violated his duty
as a co-trustee in connection with a certain loan by said

"Charity Fund" to Robert and Luther Mankin, said loan now being in default; and to have judgment against Robson, as well as the defendants connected with the Mankin interests.

The chancellor, upon consideration of the pleadings and evidence adduced, entered a decree for defendants, and plaintiff brings the cause here on appeal.

A. M. Prichard, one of the six trustees, and the guiding spirit of the Board of Trustees of Lewis Prichard Charity Fund, lived for the most of the time in Virginia; and Houghton A. Robson, another trustee, resided in Huntington, West Virginia. Along some time prior to 1924, Robson, owner of a one-half undivided interest in three parcels of land, situate in Huntington, made overtures to The Board of Trustees of the Prichard School, of which Fred C. Prichard was a member, the owner of the other half, for the purchase thereof. A proceeding was had in the circuit court of Cabell County in October, 1924, whereby the Prichard School was authorized to sell and Robson to purchase, the former's one-half interest in said lots, for the sum of $34,750.00, of which $750.00 was to be cash in hand paid, a note for $4,-000.00 due in six months; $10,000.00 due in one year, $10,000.00 due in two years, and $10,000.00 due in three years, all of said sums evidenced by promissory notes, except cash payment, and a vendor's lien was retained in said deed to secure payment of said purchase money to the said Prichard School. It was expressly agreed in said proceeding "all of the notes are to be dated and the transaction closed as of July 25, 1924." The deed was executed on November 24, 1924. The court order was entered of record on June 11, 1925.

Under date of April 30, 1925, "R. Mankin & Company, by Shirley Ruffner, Sec.", directed the following letter to H. A. Robson:

"Dear Mr. Robson:

With further reference to the matter of the loan of $30,000.00 or $35,000.00, on high grade first mortgage, for five or ten years, we will

be glad to take this money, and as security would give the following property, located, as you know, in the highest residential section of the city:

| | |
|---|---|
| 1 Lot 417 10th avenue, 40 x 200, value | $ 6,000.00 |
| Brick house on same, 10 rms., full basement | 17,500.00 |
| 1 Lot 419 10th avenue, 40 x 200, value | 6,000.00 |
| Brick house on same, 10 rms., full basement | 17,500.00 |
| 1 Lot 421 10th avenue, 40 x 200 | 6,000.00 |
| 1 Lot 423 10th avenue, 40 x 200 | 6,000.00 |
| 1 Lot 425 10th avenue, 40 x 200 | 6;000.00 |

TOTAL VALUE .................$65,000.00

This is a property in a solid block, and is the residence and home of Mr. R. Mankin and L. Mankin. The houses are new, and the price named is the actual cost of them, without a builders profit, as we built them of our own material, with our own crews, and the value named is the ledger cost.

Mr. R. & L. Mankin would personally endorse the loan in addition to the property security, and, if agreeable to the lender, would pay the interest quarterly. This proposition is made with the understanding that interest rate is to be 6%.

The property is free and clear, as the lots were purchased practically on a cash basis, and the houses were built from profits accuring to the building department of our company.

With the hope that the whole plan will be matured as outlined, or with any reasonable modifications that the lender might suggest,

and with many thanks to you, personally, for bringing this to our attention, we are

Sincerely,".

Robson forwarded the foregoing to A. M. Prichard, as treasurer of the "Charity Fund Board," after having made the following notation, in his own handwriting, on the left margin thereof:

"Dear Meade—See enclosed letter. I have examined the property & believe it worth the amt. stated in this letter. The Mankins are good reliable business men, & the loan to them with the security offered would in my judgment be absolutely safe & you would get the interest promptly quarterly.

Sincerely,

H. A. Robson."

And, on May 2, 1925, Prichard replied to Robson on the back of the foregoing letter, as follows:

"Dear Mr. Robson:

Replying to yours of the 30th relative to loan to R. Mankin & Co., if you think this is perfectly safe, and Mankin will stand the expense of an examination of title and preparation of the trust deed and notes and recording fees, I am satisfied to make the loan for $30,000.00 for five years, with interest payable quarterly, by interest notes. Original and interest notes to be indorsed by individual members and at least $30,000.00 insurance payable to the Board of Trustees as their interest may appear. Lot 200 x 200 feet with two buildings. Judge Campbell, or Livezey to act as attorney, to be paid by Mankin. Follow trust deed as prepared by me

for Huntington Dev. Co., with such improvements on it as they or either of them can make. When every thing complete send to me for inspection, and I will return with check to you for record at Mankin's expense.

Sincerely,"

The loan was made to the Mankins, and a deed of trust executed on the real estate mentioned in the foregoing correspondence on May 14, 1925, to C. P. Nelson, trustee, to secure payment of the notes evidencing the loan.

It appears that Robson, the two Mankins and Nelson (the latter a son-in-law of Robson), together with their respective wives, on October 30, 1925, conveyed their several interests in the three tracts of land "being described the same as in deed from the Board of Trustees of Prichard School to H. A. Robson, of date Nov. 24, 1924, and not yet recorded" to Mankin Investment Company.

The bill of complaint, in addition to setting out the foregoing facts, alleges that Robson, sometime in 1924 had conceived a plan of using some funds in hands of the "Charity Fund" to his own use and the use of the other named defendants, in the purchase of the one-half interest of the Prichard School in the three lots heretofore referred to; that the statements in the letter which Robson forwarded to Prichard are false in each and every particular, and that the values set out therein were known by the said two Mankins and Robson to have been false and that such statements were made with intent then and there to procure from the "Charity Fund" the loan of $35,000.00; that Prichard, without the knowledge of such scheme, and relying upon Robson's notation on the Mankin letter, was induced thereby to lend to Robert Mankin and Luther Mankin the said sum of $35,000.00, on the security described in said letter, the deed of trust therefor having been duly recorded; that since the ostensible loan made to the two Mankins,

for $35,000.00, the properties given as security therefor have been deeded to the Mankin Realty Company, which company now holds legal title thereto, subject, however, to the deed of trust mentioned aforesaid; and that the payments, secured by said trust deed, have been in default since 1931, and that there is now owing to the "Charity Fund" the sum of $44,000.00.

The bill further avers that the aforesaid three parcels of land acquired by the Mankin Investment Company, as heretofore set out, has, by virtue of the foregoing scheme, and the lack of knowledge on the part of the "Charity Fund" that Robson, a co-trustee, would be directly, or indirectly, benefited by the loan, become impressed with a resulting and constructive trust.

The several defendants, including Houghton A. Robson, filed answers, in which the allegations of wrongdoing were categorically denied. These answers admit that the $35,000.00 loan was made to the Mankins by Prichard on behalf of the "Charity Fund;" that Robson did convey the land, of which he secured a deed for the half interest therein from the circuit court, to the Mankin Investment Company; that the Mankins conveyed the land on which Prichard has deed of trust to secure the loan to the said Prichard Charity Fund, to the Mankin Investment Company. These answers deny specifically that Robson received any of the money that the Mankins received as a loan from the Prichard Charity Fund, or that he received in any way a credit for any of such money. Robson denies any improper act in connection with the distribution of said fund by the Mankins. And further, he denies any intent of violating his duties as a co-trustee of the "Charity Fund."

However, the plaintiff relies upon the well recognized legal principle that the trustee cannot use or deal with trust properties for his own personal advantage. Underhill on Trusts and Trustees (Am. Ed.), p. 321. The foregoing is one of the cardinal principles of equity law, particularly pertaining to that branch of it known as trusts. Was Robson personally interested, directly or indirectly, in the loan from the "Charity Fund Board" to

the Mankins? Does the evidence show the interlocking nature of the loan to the Mankins with the transaction Robson had with the Prichard School involving one-half interest in the three tracts which he purchased therefrom?

It seems that at the time of the loan from Prichard to the Mankins that Robson was interested in the purchase of the remaining one-half interest, which fee was held by the Prichard School. He owed substantially the same amount, or he was required to pay in the circuit court, substantially for such one-half interest, as the Mankins secured from Prichard by loan. It is shown in evidence that although such conveyance was made to Robson in November, 1924, that it does not appear to have been made until June 11, 1925, by what purports to be a *nunc pro tunc* order. It is not clear who wrote the part of the June, 1925, order that had appended to it the words: "It appearing to the court that this order should have been entered as of November 24, 1924, but that it was inadvertently omitted from the record, the same is entered now for them, *nunc pro tunc*." The attorney who prepared the petition asking permission to sell, testified that he knew nothing of the fact that such was a *nunc pro tunc* order. He insisted that the proceeding was had in 1924. Robson was interrogated about the *nunc pro tunc* order and disclaimed any knowledge of it whatever. The clerk of the court was not called to testify in regard to the matter. The question was raised to substantiate the fact that Robson was needing the money to carry through his deal for the one-half interest in Prichard School property. That the sale of the school property was delayed until the Mankins should secure their loan from the "Charity Fund." The correspondence concerning this loan occurred during the spring of 1925. The "R. Mankin and Company" letter to Robson, which bore the latter's notation, was not mailed to A. M. Prichard until April or May, 1925. In any event, there is much in the record to show that Robson and the Mankins had interlocking interests in property. The fact that Robson does not know by whom the record of the decree

containing the *nunc pro tunc* order was made or why it was made shows accusingly against him. Likewise, the fact that he joined with the Mankins in conveying the property he secured by the circuit court proceeding to the Mankin Investment Company shortly after he secured the title thereto. The ordinary assets of the Mankin holdings were swept away in the panic days of 1929.

It may be submitted that Robson in the notation on the Ruffner letter gave Prichard the idea that the land was worth more than it actually was worth at that time. Ruffner stated that it was worth $65,000.00. The proof shows that it was not worth that. True, there is some testimony that at that particular time it was worth something like $40,000.00 to $45,000.00. It will be observed that Robson was very emphatic as to worth of the property. His notation appears to make him very anxious to see the loan consummated. True, he says that he and the Mankins were very good friends. But, on the other hand, it was as much the duty of Robson to see that the money received on the loan was not lost. He could not escape this duty. The very fact that he lived in the same city with the Mankins; that he knew of their business interests; that he later knew of the property on which the Prichard Charity Fund was loaned to the Mankins going into the hands of the Mankin Investment Company should have made him the more insistent that the fund so obtained should be jealously guarded. The testimony shows that he joined in making the deed to the Mankin Investment Company of the property he obtained from Prichard School. It also appears from the evidence that the Mankin Investment Company was organized by the Mankins and C. P. Nelson, the latter being the son-in-law of Robson. Another fact stands out against his contention of innocence. Where have all the books of the divers Mankin business matters gone? No one can tell where they are. That reputable business men conducted their business in the ordinary business way is understood. They seek to show that their business and property has been swept away. At least they should be able to point out where the former books of the com-

panies were. The witnesses all display a surprising lack of information in regard to the former books of the companies wherewith they performed business in their communities. The failure to produce books and documents shown in existence and properly subpoenaed raises a presumption that such books and documents, if produced, would operate against them and in favor of the appellant. 10 R. C. L. 889; 34 L. R. A. 582; Anno. Cas. 1914 A, 1926. But it matters not whether Robson knew that this money was used in an unlawful way or not. He was a co-trustee in the Prichard Charity Fund. He knew the money was to be loaned to the Mankins. He advised that it be so loaned. Did his duty cease with the loan? Necessarily not. He is enjoined to act in keeping the fund secure. A trustee cannot place himself in a position where his self-interest will and possibly may conflict with his duties as trustee. *Bennett* v. *Weber,* 323 Ill. 283, 154 N. E. 105. Nor must the trustee place himself in a position where his self-interest is antagonistic to the interests of the trust. *Newcome* v. *Brooks,* 16 W. Va. 32; *Taylor* v. *Thomas,* 109 W. Va. 496, 155 S. E. 546. Does not Robson place himself in a double agency, representing the "Charity Board Fund" and the Mankins for his own benefit, to the detriment and injury of the trust under which he was one of the co-trustees? The policy of the law is to regard all transactions between a trustee and his *cestui que trust* as presumptively fraudulent, and void at the election of the latter. Equity casts upon the trustee the burden of proving affirmatively his compliance with equity requisitions and of thereby overcoming the presumptions. *Truslow* v. *Parkersburg, etc.,* 61 W. Va. 628, 57 S. E. 51; *Guthrie* v. *Huntington, etc.,* 71 W. Va. 383, 76 S. E. 795; *Branch* v. *Buckley,* 109 W. Va. 784, 65 S. E. 652. So believing, the one-half interest in the real estate involved now in the name of the Mankin Investment Company, purchased by Robson from the Prichard School, is subject to a resulting and constructive trust in favor of the appellant. Of course, the foregoing statement applies to what is left due, if anything, after the property owned by the Mankins, is sold under the deed

of trust by the Prichard Charity Fund, for the loan secured by said trust.

For the foregoing reasons, this case is reversed, and returned to the circuit court of Cabell County, that said court may enter a decree according to the opinion here written.

*Reversed and remanded.*

HATCHER, PRESIDENT, concurring:

The following facts are not in controversy. On July 25, 1924, H. A. Robson purchased from Prichard School, in his own name, an undivided one-half interest in three city lots. The purchase was made for Robert and Luther Mankin. The purchase price was $34,750.00, of which Robson paid $750.00 in cash and executed his personal notes for the balance. One note of $4,000.00 was due in six months and three notes of $10,000.00 each were due in one, two and three years, respectively, from date of purchase. The $4,000.00 note was paid about two weeks after it fell due. On May 21, 1925, Lewis Prichard Charity Fund, at the instance of Robson, its trustee, loaned Robert and Luther Mankin $35,000.00, which was placed to the account of R. Mankin Company, a partnership composed of Robert and Luther. On July 25, 1925, R. Mankin Company paid to Prichard School the first of the $10,000.00 notes and in course of time paid the two remaining notes.

The Mankins and Robson testify that he received none of the money borrowed from the Charity Fund. The Mankins say that this money was used in their general business and none was paid directly to Prichard School. The following conclusion, however, seems clear. Robson, by obligating himself to pay Prichard School for the moiety purchased in behalf of the Mankins, underwrote the Mankins for that payment, of which $30,000.00 was still unpaid in May, 1925. The Mankins were then in financial straits, as evidenced by the mortgage of their homes to secure the loan from the Charity Fund. By arranging that loan to them, Robson eased their financial strain and enabled them to pay from their general funds

the $30,000.00 for which he himself was still obligated. Thus, the loan, in effect, relieved him of that obligation. A trustee is not permitted ordinarily to manipulate trust funds so as to derive any personal advantage. Perry on Trusts (7th Ed), sec. 427; Pomeroy Eq. Juris. (4th Ed.), sec. 1075; 65 C. J. subject Trusts, sec. 520.