575 S.E.2d 419

Ann Tierney SMITH, as Executrix of the Estate of Katharine B. Tierney, Ann Barclay Smith and Laurence E. Tierney Smith, Plaintiffs Below, Appellants,

v.

FIRST COMMUNITY BANCSHARES, INC. (fka FCFT, Inc.), First Community Bank, Inc., Gentry Locke Rakes & Moore, and W. William Gust, Defendants Below, Appellees,

and

Ann Tierney Smith, as Executrix of the Estate of Katharine B. Tierney, Ann Barclay Smith and Laurence E. Tierney Smith, Plaintiffs Below, Appellees,

v.

First Community Bancshares, Inc. (fka FCFT, Inc.), First Community Bank, Inc., Gentry Locke Rakes & Moore, and W. William Gust, Defendants Below, Appellants.

Nos. 30623, 30624.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 13, 2002.

Decided Dec. 9, 2002.

Thomas R. Goodwin, Esq., Johnny M. Knisely, II, Esq., Goodwin & Goodwin, LLP, Charleston, West Virginia and Scott D. Maddox, Esq., Plymale & Maddox, Huntington, West Virginia and Christopher W. Mahoney, Esq., Law Office of Duane Morris, Washington, D.C., for Ann Tierney Smith, Ann Barclay Smith, and Laurence E. Tierney Smith.

Mary H. Sanders, Esq., Huddleston, Bolen, Beatty, Porter & Copen, LLP, Charles-

ton, West Virginia and Scott K. Sheets, Esq., Huddleston, Bolen, Beatty, Porter & Copen, LLP, Huntington, West Virginia, for First Community Bank, Inc. and First Community Bancshares, Inc.

David Burton, Esq., Burton & Kilgore, Princeton, West Virginia and Dennis I. Belcher, Esq., Laura O. Pomeroy, Esq., McGuire Woods, LLP, Richmond, VA, for Gentry Locke Rakes & Moore and W. William Gust.

MAYNARD, Justice.

In case number 30623, the appellants and plaintiffs below, Ann Tierney Smith, Ann Barclay Smith, and Laurence E. Tierney Smith, sued the appellees and defendants below, First Community Bancshares, Inc. (formerly known as FCFT, Inc.), First Community Bank, Inc., Gentry Locke Rakes & Moore, and W. William Gust, for alleged wrongful invasion of the corpus of a marital trust. The appellants now appeal three orders of the Circuit Court of Mercer County dated February 16, 1999, November 28, 2000, and December 28, 2000, in which the circuit court ruled against the appellants. After careful consideration of the issues, this Court affirms the rulings of the circuit court.

In case number 30624, the appellees and defendants below, Gentry Locke Rakes & Moore and W. William Gust, appeal the June 11, 2001, order of the Circuit Court of Mercer County that dismissed the appellees' counterclaim for legal fees and costs. Again, this Court affirms the ruling of the circuit court.

### I.

### FACTS

This case begins with the last will and testament of Laurence E. Tierney ("Mr. Tierney"), the husband of Katharine B. Tierney ("Mrs. Tierney"), the father of the appellant and plaintiff below, Ann Tierney Smith ("Mrs. Smith"), and the grandfather of the appellants and plaintiffs below, Ann Barclay Smith ("Ann") and Laurence E. Tierney Smith ("Laurence"). Mr. Tierney's will was executed in 1965 and probated after his death on March 22, 1972.

Paragraph IV of Mr. Tierney's will established a marital trust for the benefit of his wife, Mrs. Tierney. Specifically, the purpose of the trust was,

to pay the net income therefrom to or for the use and benefit of my wife, Katharine B. Tierney, in quarter-annual or more frequent installments during each year throughout her lifetime; and upon her death to pay, transfer and set over the then trust estate to such person or persons as my said wife may by her last will and testament appoint, free of any trust or in further trust as she may determine, but in default of a valid appointment, in whole or in part, to pay, transfer and set over the then trust estate, or the part not so appointed, to the trust created by paragraph V hereof, the same to be added to and administered under the terms and provisions of that trust as a part thereof. And anything in the foregoing to the contrary notwithstanding, I direct the said Trustee to pay to my said wife, out of the principal of the aforesaid trust estate, upon her request therefor in writing, such sum or sums as may be required to meet any need or condition which may arise or develop and which in the judgment of the Trustee justifies invading the corpus of the trust estate.

Mr. Tierney made The Flat Top National Bank of Bluefield the trustee of the marital trust. The successor in interest to The Flat Top National Bank is appellee, First Community Bank, Inc. Mr. Tierney was once the president of The Flat Top National Bank, and he established the bank's trust department.

Mr. Tierney amended his will by codicil on August 27, 1971, and again on February 15, 1972. Under paragraph V of the will as amended, Mr. Tierney created the residuary trust referred to in paragraph IV set forth above. Pursuant to the terms of the residuary trust, its net income was to be paid

to or for the use and benefit of my daughter, Ann Tierney Smith, in quarter-annual or more frequent installments throughout her lifetime, and upon the death of my said daughter or at my death if she shall have

814

predeceased me, the Trustee shall use the said one-half (½) of the said net income for the maintenance, education and support of her children until the youngest of them living shall have attained the age of twenty-one (21) years, at which time the Trustee shall pay, transfer, set over and settle one-half (½) of the then trust estate, or the whole thereof as hereinafter provided, upon the children of my said daughter, in equal shares to each of them; and the Trustee shall pay the other one-half (½) of the net income of the trust to or for the use and benefit of Erika N. Moore, in quarter-annual or more frequent installments during her lifetime, and upon the death of the said Erika N. Moore or at my death if she shall have predeceased me, the Trustee shall use the said one-half (½) of the said net income for the maintenance, education and support of her children now living until the youngest of them living shall have attained the age of twenty-five (25) years, at which time all interest of the said Erika N. Moore and her said children in this trust shall terminate and the entire income and principal of the trust shall be paid to and shall be settled upon my daughter, Ann Tierney Smith, and her children, as hereinabove provided for them as to the other one-half (½) thereof. The foregoing provision for the payment of income from the trust to Erika N. Moore and her children shall be effective only if the said Erika N. Moore and her husband, James Moore, shall become separated or divorced as is now contemplated by them, and shall cease to be effective thereafter in the event of her remarriage, and if the said Erika N. Moore should remarry all interest of the said Erika N. Moore and her children in this trust shall terminate and the entire income and principal of the trust shall be paid to and shall be settled upon my daughter, Ann Tierney Smith, and her children, as hereinabove provided for them as to the other one-half (½) thereof.

The Flat Top Bank was also made the trustee of the residuary trust.

In 1995, appellee, W. William Gust, a partner in the law firm of Gentry Locke Rakes & Moore ("Gentry Locke"), also an appellee, advised Mrs. Tierney in regards to an estate plan for the purpose of avoiding excessive estate tax liability on the marital trust. In an August 8, 1995, letter, Gust informed Mrs. Tierney,

Upon your death, the full value of the assets held in the Marital Trust must be included in your taxable estate for federal estate tax purposes. Based upon the current estimated value of these shares, when combined with the balance of your independent estate, you may suffer a loss in excess of 55% due to the estate tax. To the extent that sufficient cash or other liquid assets are not otherwise available to pay this tax liability, it may be necessary to sell the underlying assets to raise the cash sufficient to pay the tax. Depending upon the timing of the sale, it may be necessary for your estate to sell certain assets for a purchase price well below their fair market value, thereby resulting in a greater loss to the estate.

Gust testified at trial that in 1995, the approximate size of Mrs. Tierney's estate was "[s]omewhere in the aggregate of" $8,750,000 and $9,000,000." The primary asset in this estate was the marital trust. Approximately 60% of the corpus of the marital trust consisted of shares of stock issued by appellee First Community Bancshares, Inc. ("Bancshares"), a public company which owns appellee First Community Bank, Inc. ("First Community Bank" or "the Bank"). The corpus of the marital trust also consisted of shares of stock in the Leatherwood Corporation and the Tierney Corporation, described by Gust as entities owned by the Tierney family.

Thereafter, Mrs. Tierney, upon the approval of the First Community Bank as trustee, transferred 71,077 shares of Bancshares stock, valued at that time at $2,238,926, from the marital trust to a Charitable Remainder Unitrust.[1] Upon Mrs. Tier-

---

1. A unitrust is "[a] trust from which a fixed percentage of the net fair market value of the trust's assets, valued annually, is paid each year to the beneficiary." Black's Law Dictionary

1534 (6th ed.1990). Under the terms of Mrs. Tierney's unitrust, she was to receive an "amount equal to the lesser of: (a) the Trust income for the taxable year", as defined in

ney's death, the balance of the property in the charitable unitrust passed to "The Katharine B. Tierney Charitable Foundation" of which the First Community Bank was the trustee. Also, Leatherwood Corporation, Tierney Corporation, and Bancshares stock, with a value of approximately $3,000,000, was transferred to a Family Limited Partnership which was created for the benefit of the appellants.

Mrs. Tierney died on July 19, 1996, and her daughter, Ann Tierney Smith, became the executrix of Mrs. Tierney's estate. Thereafter, the appellants, Ann Tierney Smith, Ann Barclay Smith, and Laurence E. Tierney Smith, brought an action in the Circuit Court of Mercer County against Bancshares, First Community Bank, Gentry Locke, and Gust. The appellants requested that the circuit court enter a declaratory judgment dissolving the charitable foundation and returning the Bancshares stock as well as all other assets of the foundation to the estate of Mrs. Tierney. Also, the appellants alleged breach of fiduciary duty, breach of contract, fraud, and negligence by Gust and Gentry Locke; and breach of fiduciary duty, fraud, and constructive fraud by Bancshares and the Bank.

Following cross-motions for summary judgment, the circuit court entered an order on February 17, 1999, in which it ruled:

the Plaintiffs had a vested remainder subject to partial or complete divestment; the marital trust gave Mrs. Tierney the right to invade the corpus of the trust for any need or condition; the trustee had considerable discretion in determining what a need or condition was; estate planning would fall within the discretion of the trustee; and the plaintiffs were partially divested of their remainder in the marital trust.

The circuit court then limited the scope of the case "to whether the Defendants breached a fiduciary duty to the Plaintiffs, whether the bank engaged in self-dealing, whether the estate plan for Mrs. Tierney was negligent, and whether the estate plan was fraud-

ulent upon the Plaintiffs due to an impermissible conflict of interest."

The matter proceeded to trial on October 2, 2000. At the close of the appellants' case in chief, the appellees moved for judgment as a matter of law pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure. By order of November 28, 2000, the circuit court granted judgment as a matter of law on behalf of Bancshares and First Community Bank. The circuit court ultimately granted judgment as a matter of law on behalf of Gust and Gentry Locke on all claims except negligence/attorney malpractice. Following the close of Gust's and Gentry Locke's evidence at trial on the issue of negligence/attorney malpractice, the jury returned a verdict in favor of Gust and Gentry Locke. The circuit court entered its final order of judgment on December 28, 2000. The appellants now appeal these orders in case number 30623.

Gust and Gentry Locke filed a counterclaim against the appellants for legal fees and costs for failure of the appellants to state a cause of action for fraud. By order of June 11, 2001, the circuit court dismissed the counterclaim. Gust and Gentry Locke now appeal this dismissal in case number 30624.

## II.

## DISCUSSION

### A. No. 30623

#### 1.

The first issue is whether Mr. Tierney's will which permits payment out of the principal of the marital trust "as may be required to meet any need or condition which may arise or develop" includes the power to transfer a portion of the principal to a charitable trust for the stated purpose of avoiding excessive estate tax liability.

The appellants contend that it does not. According to the appellants, the ostensible reason for creating the charitable trust and foundation, which was to reduce the size of

§ 643(b) of the Code and the Treasury Regulations thereunder, and (b) six and one half percent (6.5%) of the net fair market value of the assets

of the Trust valued as of the first day of each taxable year of the Trust[.]

the estate tax on Mrs. Tierney's estate, was not a "need or condition" of the life beneficiary and was not authorized by the terms of the will. The appellants assert that gifts of a trust's corpus are impermissible even where the beneficiary is given an otherwise unlimited power to use and consume the corpus.

■ As a preliminary matter, we note that the circuit court's ruling on this issue amounted to a grant of partial summary judgment on behalf of the appellees. Therefore, we will review the circuit court's ruling *de novo. See* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo.*"). In addition, we are being asked to construe an ambiguous provision of Mr. Tierney's will. "The paramount rule in construing a will is that the intention of the testator controls and must be given effect, unless that intention violates some positive rule of law or public policy." Syllabus Point 4, *Weiss v. Soto,* 142 W.Va. 783, 98 S.E.2d 727 (1957). Further, "[i]n construing a will the intention must be ascertained from the words used by the testator, considered in the light of the language of the entire will and the circumstances surrounding the testator when he made his will." Syllabus Point 7, *id. See also Wooddell v. Frye,* 144 W.Va. 755, 759, 110 S.E.2d 916, 919 (1959) ("The true inquiry in the construction of a will is not what the testator meant to express but what the words he has used do express." (Citations omitted)).

After reviewing the arguments of the parties and considering the language of Mr. Tierney's will, this Court concludes that the invasion of the corpus of the marital trust was proper. There is no hard and fast rule that we can look to in deciding this issue. Instead,

> Whether and under what circumstances and to what extent a beneficiary who is entitled to receive the whole or a part of the income from the trust estate is entitled also to receive a part or the whole of the principal, depends on the terms of the trust....
>
> Where it is provided by the terms of the trust that the trustee in his discretion may or shall invade the principal for the benefit of the income beneficiary, the extent of the power or duty of the trustee to do so depends on the terms of the trust. In such a case the court will not substitute its discretion for that of the trustee and will interpose only to prevent an abuse of discretion by the trustee.

II Scott & Fratcher, *The Law of Trusts,* § 128.7, pp. 369, 371–375 (4th ed.1987). We believe that the broad language of Mr. Tierney's will coupled with the fact that Mrs. Tierney had a general power of appointment indicates that the trust principal could be used for estate planning in order to avoid excessive estate taxation.

Mr. Tierney directed the trustee of the marital trust "to pay to my said wife, out of the principal of the aforesaid trust estate, upon her request therefor in writing, such sum or sums as may be required to meet any need or condition which may arise or develop[.]" In addition, the will granted Mrs. Tierney the power "upon her death to pay, transfer and set over the then trust estate to such person or persons as [she] may by her last will and testament appoint, free of any trust or in further trust as she may determine[.]" No cases have been cited to this Court by the parties nor has our own research revealed any cases in which a court construed the same or very similar language. "It is a cliche of the Bar that no will has a twin. More accurately, it might be said that no will requiring a determination by a court as to its construction is twin to another will requiring such determination by a court." *In re Johnson's Estate,* 46 Misc.2d 52, 53, 258 N.Y.S.2d 922, 924 (1965). This Court has not found a twin to Mr. Tierney's will.

The appellants have cited several cases in which courts have construed the word "need," but most of these cases differ significantly from the instant case. For example, in *Emmert v. Old Nat'l Bank,* 162 W.Va. 48, 246 S.E.2d 236 (1978), this Court held that the "necessity" requirement which had to be satisfied before the trust corpus could be encroached upon made the corpus available only after the beneficiary's other financial resources were exhausted. The operative testamentary language provided that "principal ... may be used by ... Trustee ... for

the purpose of adequately providing for the comfort and support of either or both of [the beneficiaries] if necessary at any time." *Emmert,* 162 W.Va. at 49, 246 S.E.2d at 238. In contrast, the language at issue in the present case is not qualified or limited by words like "comfort" and "support" and is not limited to a need or condition of the beneficiary.

In *Pittsfield Nat'l Bank v. U.S.,* 181 F.Supp. 851 (D.Mass.1960), the court held that language that the trust beneficiary was to receive income for his lifetime "together with all or such part of the principal of same as he may from time to time request, he to be the sole judge of his needs," 181 F.Supp. at 852, meant that the principal could only be invaded if the donee was in "financial or physical need." 181 F.Supp. at 854. This conclusion was compelled in part by the circumstances surrounding the creation of the trust and the provisions concerning the disposition of .the remainder. Specifically, the court determined that the settlor "intended principally to provide for the remaindermen and to give her husband a power of invasion only in the unlikely event that he should need any part of the principal[.]" In the instant case, in contrast, it is clear that Mr. Tierney intended to provide principally for Mrs. Tierney since she was to receive the net income from the trust for her lifetime, enjoyed a general power of appointment, and thus could have prevented the appellants from receiving any of the trust corpus.

In *Wright v. Trust Company Bank,* 260 Ga. 414, 396 S.E.2d 213 (1990), the co-trustee and beneficiary of a life estate created by her father sought to encroach into the trust principal in order to purchase her husband's one-half interest in real estate jointly owned by her husband and herself. According to the trust language, if the income of the trust became insufficient "to meet any reasonable need of any kind or character of my said daughter that she might experience," 260 Ga. at 414, 396 S.E.2d at 215, the trustees were authorized to invade the trust principal to acquire the amount necessary to meet the need. The will provided that, upon the death of the life beneficiary, the trust principal was to be divided among her husband and her children. The trial court ruled that such

encroachment was improper, and the Supreme Court of Georgia agreed. It held that "the term 'need' refers to the beneficiary's health, maintenance, and support consistent with the beneficiary's accustomed manner of living[.]" 260 Ga. at 415, 396 S.E.2d at 215. The Georgia court was guided in part by the fact that "[s]ince the power to encroach and the mode of its exercise had the effect of cutting off the remaindermen, it must be strictly construed." 260 Ga. at 416, 396 S.E.2d at 215 (citation omitted). Again, this case differs significantly in that the appellants would not take from the trust except in default of a valid appointment.

Finally, the court in *Funk v. Commissioner of Internal Revenue,* 185 F.2d 127 (3rd.Cir.1950), was asked to determine the meaning of the terms of four trusts in which the trustee was given the authority in her discretion to pay all or a part of the net income annually to herself or her husband, the settlor, in accordance with their respective needs of which the trustee was to be the sole judge. Income not paid out was to be added to the principal. The settlor-beneficiary retained a general power of appointment, but in default thereof, contingent beneficiaries were specified. The court determined that the ordinary meaning of "needs" under New Jersey law includes the essentials of life or "that which is reasonably necessary to maintain a beneficiary's station in life." 185 F.2d at 131 (footnote omitted). In *Funk,* however, the language at issue was narrower in that it provided simply for "needs" in contrast to *"any* need *or* condition." In addition, the language specified payment for "our" [the beneficiaries'] respective needs, while the language in the instant case is not clearly limited to a need or condition of Mrs. Tierney. Therefore, we find that the construction of the word "needs" in the cases cited to us by the appellants is not controlling under the circumstances of the case before us.

This Court's own research reveals how broad the language in Mr. Tierney's will is when compared with testamentary language in other cases. *See In re Johnson's Estate,* 46 Misc.2d 52, 54, 258 N.Y.S.2d 922, 925 (1965) (authorizing encroachment of trust

principal for payments to beneficiary which "[t]rustees may deem necessary and proper for [her] comfortable support and maintenance"); *Copp v. Worcester County National Bank,* 347 Mass. 548, 199 N.E.2d 200, 202 (1964) (authorizing spending from trust principal "as may be necessary or desirable for the proper support and maintenance of my ... wife"); *Martin v. Simmons First Nat'l Bank,* 250 Ark. 774, 776, 467 S.W.2d 165, 167 (1971) (directing trustee to sell shares of stock in trust corpus "[i]n the event the said income is not sufficient to provide for the needs of my said sister by reason of her illness or by reason of accident or other calamity (a)ffecting her"); *Griffith v. First National Bank & Trust Co.,* 249 Ga. 143, 144, 287 S.E.2d 526, 528 (1982) (indicating that trust principal may be encroached upon "as the Trustee may deem necessary ... to provide for the support in reasonable comfort of the Trustee's wife"); *In re Mayer's Will,* 59 N.Y.S.2d 558, 559 (1945) (instructing trustee to pay over to beneficiary "such part, or all of the principal as may be necessary for her welfare and comfort."); *In re Ginnever's Estate,* 69 N.Y.S.2d 452, 454 (1947) (providing that beneficiary may "consume so much of my said Residuary Estate as her reasonable needs may require"); *In re Wittner's Estate,* 301 N.Y. 461, 463, 95 N.E.2d 798, 799 (1950) (authorizing invasion of trust corpus "in the event of any need on the part of any of my children, or my husband, occasioned by misfortune, sickness or by any other reason whatsoever"); and *First Union Nat'l Bank v. Frumkin,* 659 So.2d 463, 464, (Fla.App. 1995) (allowing payment of principal for beneficiary's "health and medical needs").

■ In sum, we find that whether the corpus of the marital trust could be invaded for the purpose of avoiding excessive estate taxation depends on the terms of the trust as set forth in Mr. Tierney's will. The construction of the word "need" in other cases is not particularly helpful under the facts of this case. A comparison of the language in Mr. Tierney's will with the testamentary language in other cases indicates that the language used by Mr. Tierney is very broad.

First, "any need" is indicated. The word "need" is not expressly limited to the comfort, support, maintenance, or welfare of the beneficiary. Also, "need" is not limited by any specific exigency of the beneficiary such as a health, medical, or financial crises. In addition, the will provides that the trust corpus may be used to meet not only a "need" but also a "condition." While the definition of the word "condition" is not clear in this context, its addition as an alternative to "need" would appear to enlarge the circumstances under which the trust corpus may be encroached upon. Moreover, it is remarkable that the phrase "any need or condition" is not limited by the phrase "of the beneficiary." By its express terms, the corpus of the trust may be used for "any need or condition" perceived by Mrs. Tierney with the approval of the trustee, apparently including a "need or condition" of the corpus of the trust itself. Finally, we believe that the appellees adduced sufficient evidence below that the distribution from the principal of the marital trust was necessary in order to mitigate estate tax consequences upon the death of Mrs. Tierney.

■ The appellants argue that Mrs. Tierney's general power of appointment is not relevant to the meaning of "any need or condition" because Mrs. Tierney did not exercise the power.[2] We disagree. The existence of the general power of appointment is highly probative of Mr. Tierney's intentions when he made his will. It indicates to us that Mr. Tierney intended the trust to provide principally for Mrs. Tierney, and the disposition of the trust principal upon her death was only a secondary concern. Otherwise, Mr. Tierney would have granted to Mrs. Tierney a simple life estate in the marital trust with the corpus to go to specified beneficiaries upon her death. Since we are not concerned here with specified beneficiaries being cut off in contravention of Mr. Tierney's purpose, we are not compelled to give a strict or narrow construction to the power to encroach on the trust corpus found in Mr. Tierney's will.

2. "By a general power we understand a right to appoint to whomsoever the donee pleases including himself or his estate." Black's Law Dictionary 1171 (6th ed.1990).

■ Accordingly, we hold that the word "need" as used in testamentary language authorizing encroachment of a trust corpus, when not expressly limited to the comfort, support, maintenance, welfare, health, or financial condition of the beneficiary, and depending upon the overall intent of the testator as indicated by the remaining terms of the will, may refer to the necessity of invading the corpus of the trust for the purpose of estate tax planning. Specifically, where a testamentary trust provides a general power of appointment to the life beneficiary and further directs the trustee "to pay to [the life beneficiary] out of the principal of the ... trust estate, upon her request therefore in writing, such sum or sums as may be required to meet any need or condition which may arise or develop and which in the judgment of the Trustee justifies invading the corpus of the trust estate[,]" the trustee is granted the discretion to invade the corpus of the trust for the necessity of estate tax planning purposes.

Therefore, for the reasons stated above, we find that the invasion of the corpus of the marital trust established in Mr. Tierney's will was proper under the specific facts of this case. Accordingly, we affirm the circuit court's February 17, 1999, summary judgment order in which it ruled that estate planning would fall within the discretion of the trustee.

### 2.

Second, the appellants contend that the circuit court erred in granting judgment as a matter of law under Rule of Civil Procedure 50(a) to the Bank and Bancshares on the appellant's breach of fiduciary duty and fraud claims. According to the appellants, the Bank as trustee breached its fiduciary duties to Mrs. Tierney and to them by (1) engaging in self-dealing by obtaining perpetual control of the Bancshares stock transferred from the marital trust; (2) failing to disclose the effect of self-dealing; and (3) failing to disclose the Bank's business, professional, and attorney-client relationships with Gust and Gentry Locke; specifically, that Bancshares was a client of Gust and Gentry Locke.

■ Concerning this Court's standard of review of this issue, we have held:

The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, the court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.

Syllabus Point 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996).

■ First, we reject the notion that the mere fact that Bancshares stock from the marital trust was transferred to the charitable remainder trust and ultimately the charitable foundation constituted self dealing by the Bank.

A bank or trust company is not subject to a surcharge for retaining its shares where such retention is authorized by the terms of the trust, unless the retention is otherwise improper. This is clear, of course, where the retention of the shares is authorized in express terms by the will or other trust instrument. Such an authorization is not invalid as contrary to public policy. The settlor can waive the application of the rule of undivided loyalty.

IIA Scott & Fratcher, *The Law of Trusts*, § 170.15, pp. 372–73 (4th ed.1987). In the instant case, there is no dispute that Mr. Tierney originally authorized the Bank to retain the Bancshares stock as trustee of the marital trust. Thereafter, under Article VI, paragraph 6.1 of the Charitable Remainder Unitrust Agreement executed by Mrs. Tierney on October 3, 1995, the Bank, as trustee of the charitable trust, was granted the power to "hold" and "retain" the trust assets, i.e., the Bancshares stock, "without diversification as to kind[.]" Further, according to W.Va. Code § 44–5A–3(a) (1993), a power may be incorporated by reference in the trust instrument for the trustee,

To retain for such time as the fiduciary considers advisable any property, real or personal, which the fiduciary may receive, even though the retention of such property by reason of its character, amount, proportion to the total estate or otherwise would not be appropriate for the fiduciary apart from this provision.

Accordingly, we conclude that the Bank as trustee of the charitable remainder trust did not engage in improper self dealing by retaining control of the Bancshares stock originally placed in the marital trust by Mr. Tierney.

Second, we do not agree with the appellants that the Bank failed to disclose the effect of the charitable trust instrument. In their brief, the appellants state that Mrs. Tierney was old and dying when she signed the charitable trust instruments, and the instruments themselves were complex. Further, the appellants cite several letters in which Gust explained to Mrs. Tierney that his estate planning recommendations were designed to assist her in transferring certain items of property to or among her various family members in an effort to minimize federal estate tax consequences; Mrs. Tierney's intention was to provide for her daughter and grandchildren as efficiently as possible; and the purpose of the trusts was to permit Mrs. Tierney's daughter and grandchildren to retain the benefits of those assets at a greatly reduced cost. Therefore, say the appellants, Mrs. Tierney did not knowingly consent to the creation of the charitable remainder trust and foundation.

We believe, however, that Mrs. Tierney's intentions are best set forth in the charitable trust instruments which bear her signature. As stated above, these trust instruments provide for the creation of a charitable remainder unitrust and a charitable foundation. The evidence shows that although Mrs. Tierney was 88 years of age when she signed these instruments in October 1995, she had not yet been diagnosed with cancer, and she was still physically active, mentally alert, and in control of her business affairs. In fact, Mrs. Tierney did not die until July 1996, nine months later. In addition, there is evidence that Mrs. Tierney expressed to Al Modena prior to the Fall of 1994 her desire to set up a charitable foundation. Also, the evidence indicates that appellant Ann Tierney Smith's own lawyer, Douglas Woloshin, expressed to Modena the need for estate planning for tax relief purposes. Further, the undisputed evidence shows that Gust met with Mrs. Tierney on numerous occasions prior to her signing the trust agreements. Moreover, we do not believe that Gust's informal summaries of Mrs. Tierney's intentions in his correspondence conflict with the terms of the charitable trust instruments. The evidence shows that Mrs. Tierney's daughter and grandchildren did receive a substantial portion of the marital trust assets. Finally, if this Court were to find, as we are urged to do by the appellants, that the mere fact that a person who executed a complex trust instrument was advanced in years and died within a year of executing the agreement raises the inference that the settlor did not understand his or her actions, a significant number of estate plans executed by elderly persons would doubtless be vulnerable to meritless challenges by unhappy beneficiaries. Accordingly, we find that the only reasonable conclusion that could be reached from the evidence is that Mrs. Tierney intended to dispose of her estate in the manner set forth in the charitable trust instruments that she executed.

Finally, the appellants claim that the Bank breached its duty of undivided loyalty to Mrs. Tierney in failing to inform her that Gentry Locke periodically represented Bancshares, the company that owns the Bank. The evidence below indicates that Aldo A. Modena recommended Gust as a lawyer to assist Mrs. Tierney in estate planning. Gentry Locke, of which Gust was a partner, periodically provided legal advice to Bancshares on stock and security as well as pension issues. Modena had been an employee of the Bank for 42 years. Prior to retirement, he had served as head of the Bank's trust department and as the Bank's president. At the time of the events in question, Modena still served on the Bank's Board of Directors and trust committee. Finally, Modena had known Mrs. Tierney and the Tierney family for several years.

The appellants contend that this evidence supports a claim for breach of fiduciary duty. This Court has long adhered to "the principle that a trustee shall not place himself in a situation where his interests conflict with his duty as a fiduciary." *Lapinsky's Estate v. Sparacino*, 148 W.Va. 38, 45, 132 S.E.2d 765, 769 (1963) (citation omitted). Again, "[a] trustee cannot place himself in a position where his self-interest will and possibly may conflict with his duties as trustee. Nor must the trustee place himself in a position where his self-interest is antagonistic to the interests of the trust." *Board of Trustees, Etc. v. Mankin Inv. Co.*, 118 W.Va. 134, 142, 189 S.E. 96, 99 (1936) (citations omitted). We have further held that "[i]n administering a trust, the trustee is generally prohibited from manipulating the trust property to his own advantage." Syllabus Point 1, *Robinson v. Hall*, 116 W.Va. 433, 181 S.E. 542 (1935). According to the Restatement (Second) of Trusts § 170, p. 364 (1959), a fiduciary has a duty of loyalty as follows:

(1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.

(2) The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know.

According to the comment on subsection (2), in part:

If the trustee acquires [an interest in the trust property] with the consent of the beneficiary, the transaction cannot be set aside by the beneficiary if the beneficiary was not under an incapacity, and had knowledge of his legal rights and of all material facts which the trustee knew or should have known unless the trustee reasonably believed that the beneficiary knew them, and was not induced by the trustee by undue influence or other improper means to enter into the transaction, and the transaction was fair and reasonable.

*Id.* at 373.

When this Court applies the law as set forth above to the evidence in this case, we believe that a jury could reasonably reach only one conclusion which is that the Bank did not breach its fiduciary duty of loyalty by failing to inform Mrs. Tierney that Gentry Locke does business for its parent company. The evidence indicates that Mrs. Tierney was aware of the nature of the charitable remainder trust and foundation. Also, even though Modena recommended Gust to Mrs. Tierney, there is no evidence that Modena was acting at the behest of the Bank or that the Bank sought to influence Gust in his estate plan recommendation to Mrs. Tierney. In addition, there is no evidence of an actual conflict, that is, that Gentry and Locke's work on behalf of Bancshares was adverse to the interests of Mrs. Tierney.

Further, even if the Bank's role as trustee of the charitable remainder trust should be considered an acquisition of interest in the trust property, there is no evidence that Mrs. Tierney was under an incapacity in October 1995 when she signed the trust instruments, that she lacked knowledge of her legal rights and all material facts, or that she was induced by undue influence or other improper means of the trustee. Finally, there is no evidence that the transaction in which Mrs. Tierney transferred principal from the marital trust into the charitable remainder trust was unfair or unreasonable to Mrs. Tierney. To the contrary, the evidence indicates that the transaction decreased the estate tax burden on the principal of the marital trust, Mrs. Tierney's daughter and grandchildren received a share of this principal, and Mrs. Tierney's charitable intentions were satisfied.

Finally, the circumstances surrounding the creation of the charitable remainder trust and foundation are notable. The evidence was that Mrs. Tierney and her family had enjoyed a long and close relationship with the Bank. At one time, Mr. Tierney had been president of the Bank. Also, Mrs. Tierney still looked to certain employees of the bank for advice on money matters. Finally, Mr. Tierney designated the Bank as trustee of the marital trust and transferred to the Bank as trustee a substantial amount of Bancshares stock. Therefore, it is certainly not unusual that Mrs. Tierney would make the

Bank the trustee of the charitable remainder trust.

■ The appellants also claim that the evidence supports a claim for fraud. Generally speaking, "[f]raud has been defined as including all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another." *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 76, 285 S.E.2d 679, 682 (1981) (citations omitted). More precisely,

> The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927).

Syllabus Point 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981). We have also recognized that " 'an action for fraud can arise by the concealment of truth.' " *Teter v. Old Colony Co.*, 190 W.Va. 711, 717, 441 S.E.2d 728, 734 (1994) (quoting *Thacker v. Tyree*, 171 W.Va. 110, 113, 297 S.E.2d 885, 888 (1982)). "Fraud is the concealment of the truth just as much as it is the utterance of a falsehood." *Frazer v. Brewer*, 52 W.Va. 306, 310, 43 S.E. 110, 111 (1903).

■ For the same reasons that we find no evidentiary basis for a finding of breach of fiduciary duty, we also find no evidentiary basis for a finding of fraud. Again, the evidence indicates that Mrs. Tierney consulted numerous times with Gust and was well-informed of her legal rights and the material facts when she executed the trust instruments. In short, there is insufficient evidence that the Bank provided Mrs. Tierney with any material false information or there was a material omission which induced Mrs. Tierney to execute the charitable trust instruments.

Accordingly, for the reasons stated above, we affirm the November 28, 2000, order of the Circuit Court of Mercer County that entered judgment as a matter of law, pursuant to R.Civ.P. 50 in favor of First Community Bank and Bancshares.

*3.*

■ The appellants next assert that the circuit court erred in entering judgment as a matter of law on their fraud and breach of fiduciary claims against Gust and Gentry Locke. Specifically, the appellants allege, first, that Gust committed breach of fiduciary duty by failing to inform Mrs. Tierney that the law firm in which he was a partner represented Bancshares on stock, securities, and pension matters. Second, they allege that Gust committed fraud by misrepresenting to Mrs. Tierney that her family would continue to control the Bank Stock transferred to the charitable remainder trust and the foundation.

Concerning the breach of fiduciary duty claim, the circuit court instructed the jury on the duty of reasonable care as follows:

> The duty to exercise reasonable care that Defendants Gust and Gentry Locke Rakes & Moore owed to Katharine Tierney included a duty of loyalty and a duty of candor. You are instructed that the duty of loyalty required Defendants Gust and Gentry Locke Rakes & Moore to represent the interests of Mrs. Tierney without being influenced by the interests of any other entity, including the defendants. The duty of care to the client also encompasses the attorney's duty to abide by the client's decisions regarding legal objectives of the representation, to act competently and with reasonable diligence, to zealously represent the client, and to keep the client reasonably informed as to the representation.

This indicates that the jury heard and was instructed to consider the appellants' evidence on the fiduciary duties of loyalty and candor.[3]

---

**3.** Frankly, the preferable practice would have been for Gust to inform Mrs. Tierney that his firm also represented Bancshares.

We further find that the appellants adduced insufficient evidence that Gust and Gentry Locke committed a material and false act that Mrs. Tierney relied on to her detriment. The jury heard evidence of the representations of Mrs. Tierney's wishes in Gust's correspondence and apparently found that Gust abided by Mrs. Tierney's decisions regarding legal objectives and kept his client reasonably informed. In addition, it is significant that the jury heard all of the appellants' evidence and did not find that Gust and Gentry Locke committed negligence or legal malpractice. Certainly, the jury could not have found that the same evidence supported a finding of fraud which requires a higher standard of proof than negligence.

Accordingly, we affirm the December 28, 2000, order of the Circuit Court of Mercer County that dismissed the claims for breach of fiduciary duty and fraud against Gust and Gentry Locke as a matter of law.

### 4.

 Finally, the appellants aver that the circuit court abused its discretion by excluding evidence that three irrevocable trusts executed by Mrs. Tierney on June 21, 1996, were terminated retroactively by order of the circuit court. These trusts were terminated at the request of the Executrix of Mrs. Tierney's estate, the intended adult beneficiaries, and a guardian ad litem appointed to represent the interests of unborn beneficiaries after the circuit court found that Mrs. Tierney, as settlor of the trusts, did not understand the three trust documents at the time they were executed. The circuit court excluded evidence of the termination of these trusts in the trial below. According to the appellants, this evidence was probative of Mrs. Tierney's lack of understanding of the charitable remainder trust instruments executed in October 1995.

 This Court has held that "[r]ules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially

outweighed by the danger of unfair prejudice to the defendant." Syllabus Point 4, *Gable v. Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991). Further,

> The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard.

Syllabus Point 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

We find that the circuit court did not abuse its discretion in excluding the evidence. The three rescinded trusts were not related to the charitable remainder trust. Also, they were executed more than eight months after the execution of the charitable remainder trust. During these eight months, Mrs. Tierney was diagnosed with cancer, underwent surgery, and experienced extensive hospital stays. Further, the execution of the three rescinded trusts occurred within a month of Mrs. Tierney's death while the charitable remainder trust was executed when Mrs. Tierney was still physically active and mentally alert. Finally, the three trusts were rescinded upon the agreement of the Bank and the appellants, in contrast to an evidentiary finding of the circuit court, and Gust and Gentry Locke were not parties to the Bank's action requesting the rescission of the trusts. Therefore, we believe that the fact that Mrs. Tierney did not understand trust documents in June 1996 is not probative of whether she understood trust documents in September and October 1995. Accordingly, we find that the circuit court did not abuse its discretion in excluding evidence of the three rescinded trusts.[4]

### B. No. 30624

 In case number 30624, Gust and Gentry Locke appeal the circuit court's dis-

---

4. The appellants also raise as an assignment of error that the circuit court erred in dismissing Ann Barclay Smith and Laurence E. Tierney Smith from the action below for lack of standing.

Because of our disposition of the other issues, we do not find it necessary to consider this assignment of error.

missal of their counterclaim for legal fees and costs in defending the fraud claim against them instituted by Ann Tierney Smith, Ann Barclay Smith, and Laurence E. Tierney Smith. In its June 11, 2001, order, the Circuit Court of Mercer County concluded that Gust and Gentry Locke did not establish a basis in law for an award of legal fees and costs. Specifically, the circuit court reasoned:

> Given the complicated nature of this case, the voluminous record, and the intricate legal analysis of the issues, this Court does not feel comfortable in pushing the envelope of the American rule that requires each party to bear its own litigation costs. Instead, this Court is of the opinion that if the Defendants wish to recover legal fees and costs on their contention that the Plaintiffs' case was unfounded, the Defendants should institute an action pursuant to the rules set forth in *McCammon v. Oldaker,* 205 W.Va. 24, 515 [516] S.E.2d 38 (1999).

■ "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement except when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syllabus Point 9, *Helmick v. Potomac Edison Co.,* 185 W.Va. 269, 406 S.E.2d 700 (1991). In reviewing the circuit court's ruling, "the standard is whether such ruling by the trial court constitutes an abuse of discretion." *Hopkins v. Yarbrough,* 168 W.Va. 480, 489, 284 S.E.2d 907, 912 (1981) (citations omitted).

Gust and Gentry Locke hinge their argument for fees and costs on Rule 11(b) of the West Virginia Rules of Civil Procedure. Specifically, they aver that the plaintiffs below not only failed to plead fraud with specificity in their complaint, but they failed to bring forth any evidence at trial to support a fraud allegation.

We conclude that the circuit court did·not ·abuse its discretion in dismissing the claim of Gust and Gentry Locke for fees and costs. As noted by the circuit court, the record below was large and the issues were complicated. After considering all of the evidence below, we do not believe it is clear that the plaintiffs below acted in bad faith, vexatiously, wantonly or for oppressive reasons. Accordingly, we affirm the June 11, 2001, order of the Circuit Court of Mercer County that dismissed the defendants' counterclaim for legal fees and costs.

### III.

### CONCLUSION

For the reasons stated above, in case number 30623, this Court affirms the rulings of the Circuit Court of Mercer County set forth in its February 16, 1999, November 28, 2000, and December 28, 2000, orders. In case number 30624, we affirm the June 11, 2001, order of the Circuit Court of Mercer County.

Affirmed.

Justice McGRAW, deeming himself disqualified, did not participate in the decision of this case.

Judge JAMES A. MATISH, sitting by temporary assignment.