UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BOSLEY RENTAL & SUPPLY, a West
Virginia corporation,
*Plaintiff-Appellant,*

and

J. C. BOSLEY CONSTRUCTION,
INCORPORATED, a West Virginia
corporation,
*Plaintiff,*

v.

BECKWITH MACHINERY COMPANY, a
Delaware corporation,
*Defendant-Appellee.*

No. 02-1207

Appeal from the United States District Court
for the Southern District of West Virginia, at Parkersburg.
Joseph Robert Goodwin, District Judge.
(CA-00-849-6)

Argued: January 23, 2003

Decided: February 21, 2003

Before WILKINS, Chief Judge, and TRAXLER and
GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Richard Allen Hayhurst, Parkersburg, West Virginia, for
Appellant. Frank Edward Simmerman, Jr., JOHNSON, SIMMER-

MAN & BROUGHTON, L.C., Clarksburg, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Bosley Rental & Supply (Bosley) appeals a judgment against it in its fraud case against Beckwith Machinery Company (Beckwith), arguing that the district court erred in granting judgment as a matter of law to Beckwith and in denying Bosley's motion to reconsider. Finding no error, we affirm.

I.

This case arises out of the sale of a piece of construction equipment. Bosley, a business involved in, *inter alia*, construction and equipment leasing, contacted Beckwith, an equipment dealer, in search of a used Model 245 shovel. After Beckwith located an appropriate machine that its sales agent stated worked properly, Bosley contracted, on May 20, 1999, to buy the machine from Beckwith for $61,000. This price included the cost of dismantling, shipping, and reassembling the shovel.

On May 26, 1999, the shovel was delivered to Bosley and reassembled. In Bosley's initial test of the equipment, the shovel loaded a truck, albeit sluggishly. The next day, however, the shovel could not perform some of its functions. It was determined that the hydraulic fluid in the shovel had become contaminated with metal shavings, necessitating expensive and time consuming repairs. Bosley subsequently brought this suit against Beckwith. The case proceeded to trial on Bosley's claims that Beckwith—through its representation that the shovel was in good working order—committed actual or con-

structive fraud in inducing Bosley to buy the shovel. Following the close of Bosley's case, the district court granted judgment as a matter of law to Beckwith, ruling that Bosley had "failed to provide evidence that Beckwith intended to defraud [Bosley], or that Beckwith owed a legal or equitable duty to [Bosley] which would relieve [Bosley] of the intent requirement for actual fraud." J.A. 160. Bosley later unsuccessfully moved the court to reconsider.

## II.

Bosley argues that the district court erred in granting judgment as a matter of law against it. The parties spend much of their briefs arguing whether, under West Virginia law,[1] Bosley was required to prove as part of its prima facie case that Beckwith *knowingly* misrepresented that the shovel was in good working order. We need not decide that issue here, however, because Bosley has failed to present any evidence that would give rise to a reasonable inference that any misrepresentation concerning the condition of the shovel, knowing or not, induced Bosley to make the purchase. *See* Fed. R. Civ. P. 50(a)(1) (entitling a party to judgment as a matter of law when the opposing "party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue"); *Smith v. First Cmty. Bancshares, Inc.*, ___ S.E.2d ___, ___, 2002 WL 31770386 (W. Va. 2002) (holding that to establish a prima facie fraud case, a plaintiff must demonstrate that he detrimentally and justifiably relied on a materially false representation or act for which the defendant is responsible). Specifically, although Bosley presented evidence that a May 27 representation that the shovel was functional would have been false, it failed to present evidence of the falsity of Beckwith's representations, made on May 20 and earlier, that the shovel was in working order. Indeed, the only testimony Bosley presented regarding the timing of the contamination of the hydraulic fluid indicated that the contamination could have been present for weeks or months before it was discovered or "it could have just happened."[2] J.A. 95. And, of course, Bosley has shown no detrimental

---

[1] The parties agree that West Virginia law applies in this diversity case.

[2] Bosley's evidence also left open the possibility that the contamination occurred during disassembly and transportation, after the deal had been consummated. Jeffrey Bosley testified as follows:

reliance on any representation made after May 20, the date that the purchase was made. We therefore conclude that the district court correctly granted judgment as a matter of law against Bosley and denied its motion for reconsideration.

### III.

For the foregoing reasons, we affirm.

*AFFIRMED*

---

Q. What, if any, steps did you see had been taken when the machine was disassembled for transportation to preserve the integrity of the hydraulic fluid?

A. Well, they had capped the lines off that went to the . . . cylinder that operates the bucket.

Q. Now, in the ordinary course of affairs, should that step be sufficient to protect the hydraulic fluid during the moving and assembly?

A. It should have been sufficient *depending on when they did it*, yes.

J.A. 70-71 (emphasis added). Mr. Bosley did not elaborate on when the lines would have needed to be capped to prevent contamination. This omission would have left the jury to speculate regarding whether the capping here was sufficient to ensure that the hydraulic pumps were not contaminated.